STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

12-640

JEREMY A. VARNEY

VERSUS

SHANNON M. VARNEY

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT
PARISH OF LAFAYETTE, NO. C-2009-1134, DIVISION H-3
HONORABLE DAVID A. BLANCHET, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Jimmie C. Peters, J. David Painter, and James T. Genovese, Judges.

AFFIRMED AND RENDERED.

Richard D. Mere
Richard D.  Mere, LTD.
321 West Main St., Ste. 1-A
Post Office Box 3301
Lafayette, Louisiana 70502-3301
(337) 269-5555
COUNSEL FOR PLAINTIFF/APPELLANT:
    Jeremy A. Varney

**Richard Ducote**
**4800 Liberty Avenue, Third Floor**
**Pittsburgh, Pennsylvania 15224**
**(412) 687-2020**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Shannon M. Varney**

**GENOVESE, Judge.**

In this domestic matter, Jeremy A. Varney appeals a judgment of the trial court terminating his visitation with his two minor children. For the reasons that follow, we affirm and render.

## FACTS AND PROCEDURAL HISTORY

Jeremy A. Varney and Shannon M. Varney were married in June 2000 in Illinois. Two children were born of the marriage: Lucien on January 18, 2006, and Arabella on April 14, 2007. The Varneys relocated to Louisiana in 2006. In August 2008, the parties separated when Shannon and the children returned to Illinois shortly before Hurricane Gustav. Although Jeremy was under the impression that Shannon and the children were temporarily evacuating to Illinois because of the storm, Shannon had decided to terminate the marriage with no intention of returning to Louisiana with the children.

Jeremy visited Shannon and the children occasionally in Illinois. During one of those visits in February 2009, without Shannon's knowledge or approval, Jeremy took the children and returned to Louisiana. Shortly after learning of their whereabouts, Shannon also returned to Louisiana.

When Shannon arrived in Louisiana, an incident occurred at a gas station wherein Shannon approached Jeremy inquiring as to the whereabouts of the children and requesting that she be able to see them. According to Shannon, Jeremy yelled at her, shoved her, and hit her in the face. As a result thereby, Shannon filed a petition for protection from abuse in Louisiana on February 25, 2009. Two days later, on February 27, 2009, Jeremy filed a suit for a divorce and incidental matters, including custody of the children. The hearing on Shannon's request for a protective order was set for March 5, 2009. On that date, Shannon dismissed her petition for protection from abuse, and the parties reached an

agreement which culminated in a consent judgment of March 24, 2009. The court-approved consent judgment provided for temporary joint custody, set forth a visitation schedule, and prohibited either party from taking the children out of Louisiana.

Once back in Shannon's custody, in March 2009, Shannon contended that Lucien began exhibiting behavioral problems which led her to suspect that Lucien had been sexually abused by Jeremy. Lucien began counseling with Christine Dugas, a Licensed Clinical Social Worker, in May 2009.

In violation of the consent judgment, Shannon returned to Illinois with the children and filed an exception of jurisdiction in Louisiana on March 9, 2009. Following a telephone conference on April 9, 2009, the judges of both states agreed and ruled that Louisiana was the home state and denied Shannon's exception of jurisdiction. Shannon was ordered to return to Louisiana with the children, which she did.

In response to Shannon having taken the children out of state in violation of the consent judgment, Jeremy filed a rule for contempt on April 3, 2009. A hearing officer conference was held on May 19, 2009, and recommendations were made relative to custody, visitation, and other incidental matters. The trial court signed a judgment in accordance therewith on May 27, 2009. Thereafter, at a June 4, 2009 hearing on Shannon's motion to have Jeremy undergo a psychological evaluation, the parties reached a stipulation agreeing to exchange medical release forms and agreeing to have the children evaluated by a mental health professional.

In April 2010, Shannon reported to Ms. Dugas that both Lucien and Arabella had exhibited sexual behavior. Additionally, Shannon reported to Ms. Dugas her suspicions of abuse by Jeremy. Ms. Dugas subsequently made a report to the

Louisiana Department of Children and Family Services (DCFS); however, there was never any investigation by the department.

Shannon and Jeremy were divorced by judgment dated June 25, 2010. There were no legal proceedings in the interim period until Shannon filed another petition for protection from abuse on August 17, 2010, wherein she made allegations of sexual abuse of Lucien by Jeremy. At an August 26, 2010 hearing, Shannon and Jeremy agreed that Shannon would have temporary custody of the children and that Jeremy would not have any contact with the children in light of Shannon's allegations of sexual abuse.

Lucien was interviewed at Hearts of Hope in Lafayette, a children's advocacy center, on August 30, 2010, relative to the alleged sexual abuse. Thereafter, on November 10, 2010, DCFS validated sexual abuse of Lucien by Jeremy. The allegation of sexual abuse was also reported to the Vermilion Parish District Attorney's Office and later presented to a grand jury, which resulted in a "no true bill."

In October 2010, Shannon filed a motion to modify the March 24, 2009 consent judgment for an increase in child support and a rule for contempt. Those matters were the subject of another hearing officer conference on March 15, 2011. At that conference, in addition to other incidental matters, Shannon was awarded temporary sole custody of the children, and Jeremy was prohibited from visiting and contacting the children. Jeremy objected to the hearing officer's recommendations, and a subsequent hearing was scheduled for March 31, 2011. At this hearing, another stipulation was reached, and the trial court ordered Dr. Kenneth Bouillion to conduct a mental health evaluation. The parties were instructed to provide to Dr. Bouillion all of the mental health records of the parties and the children, as well as a copy of the documentation from Lucien's interview

with Hearts of Hope. At this juncture, Jeremy was allowed supervised visitation with the children at Avec Les Enfants Visitation Center, which he began on June 11, 2011. On September 7, 2011, the Louisiana State Police conducted an investigation into the allegations of sexual abuse, and Lucien underwent an interview by the state police. Dr. Bouillion rendered his report on October 13, 2011.

On January 5, 2012, Shannon filed a motion to modify custody wherein she also sought termination of Jeremy's visitation and for the additional relief available pursuant to La.R.S. 9:361 through La.R.S. 9:369,[1] and La.R.S. 9:341.[2] Following a four-day trial, February 7–10, 2012, the trial court issued oral reasons for judgment, concluding that Jeremy had a history of perpetuating family violence against Shannon and that Jeremy had sexually abused Lucien on at least one occasion. Jeremy has appealed the judgment of the trial court signed on March 22, 2010. Additionally, Shannon seeks damages for frivolous appeal and an award of attorney fees and costs. For the reasons that follow, we affirm and render.

## ASSIGNMENTS OF ERROR

On appeal, Jeremy presents the following assignments of error:

1.

The [t]rial [c]ourt had insufficient evidence to find a "history of perpetuating family violence" sufficient to bar visitation.

---

[1] Louisiana Revised Statutes 9:361, and following, is the Post-Separation Family Violence Relief Act (P-SFVRA) appearing in the chapter on divorce in Title 9.

[2] Louisiana Revised Statutes 9:341 provides for restrictions on visitation when there has been physical or sexual abuse.

4

2.

The allegations of domestic violence, viewed in a totality of the circumstances, did not lead to the conclusion that child visitation would be a new form[3] of abuse, for the child or the abused spouse.

3.

There was insufficient evidence, under the clear and convincing standard, to show that [he] sexually abused [his son], in this case.

4.

There was extensive evidence given that [Shannon] coached the minor child concerning the allegations of sexual abuse.[4]

## LAW AND DISCUSSION

The pertinent standard of review in this case is set forth as follows:

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). This is especially applicable in a child custody dispute wherein appellate courts accord substantial deference to the trial judge's conclusions. "The trial judge is in a better position to evaluate the best interest of a child from his observance of the parties and the witnesses and his decision will not be disturbed on review absent a clear showing of abuse." *Deason v. Deason*, 99-1811, p. 12 (La.App. 3 Cir. 4/5/00), 759 So.2d 219, 220 (quoting *State in the Interest of Sylvester*, 525 So.2d 604, 608 (La.App. 3 Cir.1988) (citing *Bagents v. Bagents*, 419 So.2d 460 (La.1982)).

Every child custody case must be viewed within its own peculiar set of facts, and a trial court's award of custody is entitled to great weight and will not be overturned on appeal unless an abuse of discretion is clearly shown. *Connelly v. Connelly*, 94-0527 (La.App. 1 Cir. 10/7/94), 644 So.2d 789. Both the Louisiana Legislature and the Louisiana Supreme Court have made it abundantly clear that the primary consideration and prevailing inquiry is whether the custody arrangement is in the best interest of the child. *See Evans v. Lungrin*, 97-541, 97-577 (La.2/6/98), 708 So.2d 731.

*LeBlanc v. LeBlanc*, 06-1307, p. 4 (La.App. 3 Cir. 3/7/07), 953 So.2d 115, 119-20.

---

[3] Given the argument later in Jeremy's brief, it is apparent that "form" was mistakenly typed instead of "forum."

[4] This statement, although identified as an assignment of error, fails to identify an alleged error of the trial court. The statement is a factual assertion; accordingly, it will only be considered as such.

Louisiana Revised Statutes 9:364 of the P-SFVRA addresses custody and visitation, and provides as follows:

A. There is created a presumption that no parent who has a history of perpetrating family violence shall be awarded sole or joint custody of children. The court may find a history of perpetrating family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence. The presumption shall be overcome only by a preponderance of the evidence that the perpetrating parent has successfully completed a treatment program as defined in R.S. 9:362, is not abusing alcohol and the illegal use of drugs scheduled in R.S. 40:964, and that the best interest of the child or children requires that parent's participation as a custodial parent because of the other parent's absence, mental illness, or substance abuse, or such other circumstances which affect the best interest of the child or children. The fact that the abused parent suffers from the effects of the abuse shall not be grounds for denying that parent custody.

B. If the court finds that both parents have a history of perpetrating family violence, custody shall be awarded solely to the parent who is less likely to continue to perpetrate family violence. In such a case, the court shall mandate completion of a treatment program by the custodial parent. If necessary to protect the welfare of the child, custody may be awarded to a suitable third person, provided that the person would not allow access to a violent parent except as ordered by the court.

C. If the court finds that a parent has a history of perpetrating family violence, the court shall allow only supervised child visitation with that parent, conditioned upon that parent's participation in and completion of a treatment program. Unsupervised visitation shall be allowed only if it is shown by a preponderance of the evidence that the violent parent has completed a treatment program, is not abusing alcohol and psychoactive drugs, and poses no danger to the child, and that such visitation is in the child's best interest.

D. If any court finds, by clear and convincing evidence, that a parent has sexually abused his or her child or children, the court shall prohibit all visitation and contact between the abusive parent and the children, until such time, following a contradictory hearing, that the court finds, by a preponderance of the evidence, that the abusive parent has successfully completed a treatment program designed for such sexual abusers, and that supervised visitation is in the children's best interest.

In his first assignment of error, Jeremy asserts that there was "insufficient evidence [for the trial court] to find a 'history of perpetuating family violence'

sufficient to bar visitation" pursuant to La.R.S. 9:364.[5] In so arguing, Jeremy focuses on the March 22, 2009 consent judgment. Jeremy notes that Shannon in fact dismissed her petition for protection from abuse, and, "[t]he consent judgment in question also allowed [him] unsupervised visitation, and equal custodial time[,] and the parties got along with one another for approximately one year after that judgment went into effect." Jeremy argues that the incident which gave rise to Shannon's petition occurred February 24, 2009, and "was the last alleged act of domestic violence, prior to this hearing."

The trial court provided extensive oral reasons in this case after considering the testimony of several witness, viewing extensive records, and viewing two interviews of Lucien. In commenting on the evidence presented relative to acts of family violence committed by Jeremy upon Shannon, the trial court stated as follows:

> The Court finds that the parties were in a very volatile relationship commencing prior to their marriage. There were several instances of domestic violence during the marriage. At a barbecue at the parties' home in Illinois after the marriage but before the children were born, Jeremy shoved Shannon into a work bench as witnessed by Karen Tobias. In December of 2008, during a hotel stay in Illinois, Jeremy hit Shannon in the face, breaking her glasses and causing scratches. These injuries were viewed by Shannon's mother[,] as she testified to.

> At Charlie's Gas Station in Henry, Louisiana, on February 24, 2009, the Court finds that Jeremy struck Shannon in the face, causing a mark under her eye, as she testified to and as was testified to by Karen Tobias.

Having reviewed the record and the transcript of these proceedings, it is clear that the foregoing is an accurate summation by the trial court of the testimony presented regarding acts of domestic violence inflicted upon Shannon by Jeremy.

---

[5] We note that, in his brief to this court, when quoting "history of family violence[,]" Jeremy cites La.R.S. 9:364(A). However, La.R.S. 9:364(A) addresses custody as opposed to visitation. Since the alleged error asserted by Jeremy raises an issue of the sufficiency of the evidence "sufficient to bar visitation[,]" this court notes that the appropriate statutory provision is La.R.S. 9:364(C).

Although Jeremy disputed the facts as testified to by Shannon, there is evidence corroborating Shannon's version of the events. When, as here, there are two permissible views of the evidence, we cannot conclude that the trial court was manifestly erroneous in finding "by a preponderance of the evidence that Shannon is an abused parent who has been subjected to family violence as defined by the Post-Separation Family Violence Relief Act[.]" Additionally, while we acknowledge that the February 24, 2009 incident was the most recent incident of domestic violence, it is clear that the trial court found that there "were several instances of domestic violence during the marriage."[6] For these reasons, we find no merit to this assignment of error.

In his second assignment of error, Jeremy argues that "the [t]rial [c]ourt did not make the second 'crucial inquiry' as to whether it could be reasonably assumed that child visitation would be the new forum for abuse[,]" citing *Michelli v. Michelli*, 93-2128 (La.App. 1 Cir. 5/5/95), 655 So.2d 1342, and *McGee v. McGee*, 98-1911 (La.App. 3 Cir. 10/13/99), 745 So.2d 708. We find no merit to this contention.

Louisiana Revised Statutes 9:364(C) provides that in instances where there has been "a history of perpetrating family violence, the court shall allow only supervised child visitation with that parent[.]" In this case, the trial court not only found that Jeremy had a history of perpetuating family violence against Shannon, it also found that Jeremy had sexually abused Lucien. Once the trial court found that there had been sexual abuse, it was bound to follow the mandatory provisions of La.R.S. 9:364(D) pertaining to visitation. Therefore, the trial court need not have addressed this inquiry, and it was not in error for not having done so.

---

[6] We also note that pursuant to La.R.S. 9:364(A) governing custody, a "court may find a history of perpetrating family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence."

In his third assignment of error, Jeremy argues that "[t]here was insufficient evidence, under the clear and convincing standard, to show that [he] sexually abused [his son] in this case." We disagree. After reviewing the entire record, exhibits, and appellate briefs, we find that there was clear and convincing evidence to support the trial court's findings and that the trial court was not clearly wrong in reaching its decision.

We are cognizant of the requirement that Shannon prove that Jeremy sexually abused Lucien. To meet her burden of proof, Shannon was required to prove this fact by clear and convincing evidence. La.R.S. 9:364(D).

This court has thoroughly reviewed the record of these proceedings. We have also reviewed the trial court's extensive oral reasons for judgment after conducting a four-day trial in this matter. At trial, a number of lay witnesses testified, three expert witnesses testified, medical records were introduced, and two interviews of Lucien were presented, all of which were considered by the trial court. Based upon the record before us, we cannot say that the conclusions reached by the trial court were manifestly erroneous. To the contrary, there is ample evidence in the record to support the trial court's conclusion that Jeremy sexually abused Lucien, as expressed in his oral reasons, which include the following:

> When the children were returned to Shannon's care in March of 2009, she claims Lucien was experiencing significant problems. Lucien screamed all the time, hurt himself by biting, bit her breasts, and couldn't sleep. Also, she alleged he regressed in potty training, though she admits he was not fully potty[-]trained at that time.

> On April 15, 2009, Shannon brought Lucien to Methodist Hospital in Illinois[,] stating that she didn't know if the child had been abused, but that Mr. Varney had been molested as a child. Lucien was discharged to outpatient services and began receiving therapy in Illinois. At some point, Shannon did return to Louisiana with the children. Lucien began seeing Ms. Christine Dugas, LCSW, in therapy in May of 2009.

9

. . . .

On April 22nd, 2010, Shannon contacted Christine Dugas to report that Arabella had begun dancing provocatively and sitting on Lucien's lap with her legs straddling his waist and attempting to kiss him on the mouth. Lucien also began hip thrusting motions with his pelvis. Shannon inquired as to what he was doing and he said: ["]My daddy does it to me.["] And then he went on to say that ["My] daddy does it to my butt.["] Ms. Dugas, as a result of this phone call, made a report to the Louisiana Department of Children and Family Services, which was apparently never investigated, presumably because the child did not make the report directly to Ms. Dugas.

. . . .

[On] August 9, [2010,] Shannon again contacted Ms. Dugas stating that on the preceding Friday night, she found Lucien on top of Arabella in bed. The children were not clothed. And when she questioned him, he said that his daddy had wee-weed on his butt. Ms. Dugas directed Shannon to report this to the Child Protection Center for investigation, which she did.

. . . .

On August 30, 2010, Lucien was interviewed at Hearts of Hope in Lafayette. On November 10, 2010, DCFS validated for sexual manipulation or fondling and oral sex of Lucien by Jeremy due to the child's statement and disclosure at the Hearts of Hope. This matter was referred to the Vermilion Parish District Attorney's Office [which] brought it to the grand jury. A "No True Bill" was returned at some point in time.

. . . .

The Court finds that Jeremy was undergoing a serious psychological disturbance from 2004 to 2006. During this time, he was drinking heavily, becoming intoxicated nearly every weekend. This resulted in several suicide attempts and at least two hospitalizations. Shannon testified that Jeremy was cutting himself on a regular basis, which Jeremy never denied, though he acknowledged cutting himself during one hospital stay only. Jeremy also admitted to hearing voices, though not to the extent that Shannon, Karen Tobias, and Shannon's mother reported.

The Court finds that Jeremy did indeed confess to his mother-in-law, his wife, and Karen Tobias that he had been sexually molested by his father and that he feared that he might do this to his own child.

. . . .

10

The Court finds that there are other indications that Jeremy was sexually abused as a child. He engaged in promiscuity [and] seemed to have a preoccupation with sexual simulation. There was testimony about numerous sexual affairs during and before the marriage. Even when he split up with Shannon and . . . was going out with Leslie Toups, he was cheating on both of them with each other. Jeremy never denied groping and humping Shannon in front of her family members on a regular basis. He also didn't deny putting his hands down her pants and on her chest. He never denied viewing pornography on a regular basis, both homosexual and heterosexual. He also did not deny arranging a threesome with himself, Shannon, and an older man. According to Shannon, she lost her nerve and did not engage in sexual relations on that occasion[,] but that Jeremy had. Jeremy has also engaged in deviant sexual activities. He never denied engaging in instant messaging and online chatting with older men who pretended to be his father. He also did not deny Shannon's testimony that he requested her to engage in role play where she was younger and younger, according to her testimony, ages 11, 10, and 9. And, also, that he would request that she would pretend to be a virgin[,] and he would pretend to be her daddy taking her virginity. Jeremy also never denied requesting that Shannon be dominant and penetrat[e] him anally and call him Daddy. He also did not deny that he made a lewd gesture with his tongue to one of Leslie Toups['] daughters, causing him to be beaten up by Toby Toups, the child's father. The Court does not know which daughter it was, but the Court notes the oldest daughter is 12 years of age.

The Court finds by clear and convincing evidence that Jeremy has sexually abused Lucien within the meaning of the Post-Separation Family Violence Relief Act.

The Court places great weight upon the testimony of Christine Dugas, the child's treating therapist from May 2009 to the present. According to her testimony, Ms. Dugas saw Lucien for approximately 100, 50-minute sessions . . . .

According to Ms. Dugas' testimony, on August 16 of 2010[,] Lucien said to her that his daddy had wee-weed in his butt. She asked him where this occurred[,] and he said that they would sleep under a blanket. He also stated[: "He] stuck his wee-wee in my butt.["] He went on to say that his father had done this to both [him] and Arabella and that this had happened more than one time. He made the same statements at the following session the next week[] and other statements that he made as visitation with his father began again. At that time, he began to talk about specifics of the abuse. And while she was preparing Lucien for Court-ordered visitation with his father, he stated that he did not wish to visit because ["]he put his pee-pee -- his wee-wee on me.["] After being reassured about his safety at the Visitation Center, Lucien did agree to attend. On June 27, [2011,] following his first supervised visit with his father, Ms. Dugas described the visit as good, but that Shannon Varney had reported that

[Lucien] had been quite anxious that night and had had trouble sleeping.

. . . .

The Court finds that taking all of the constellation of symptomatology, there is an indication that there was sexual abuse in this case of Lucien by his father.

The Court notes the case note of Ms. Dugas on October 24, 2011, that Lucien stated he felt angry with his father because he is lying about something. He went on to state that [his father] was lying about the bad thing he did. Lucien also said he didn't want his dad to get into trouble; that he wanted to visit with him and he would say prayers for him. Later on, Lucien would say: ["]I want him to lie so that he won't get into trouble.["] And, finally, Lucien said: ["]I could say it didn't happen so that he won't be in trouble.["] This tells me that Lucien is struggling with this situation. Lucien knows the truth. And Lucien is in his own mind trying to figure out how his dad could stay out of trouble. Never does he say[: "If] I tell the truth, then Daddy won't be in trouble.["] I think this is a pretty amazing set of statements by the child that indicate to me that the child is telling the truth. [Ms.] Dugas went on to talk about the instances of inappropriate sexual behavior and sexualized behavior of the child, Lucien, towards his sister and the problematic masturbation and so forth.

The Court also viewed the videotapes, the Hearts of Hope videotape on August 30, 2010, when Lucien was four years and seven months old. Lucien did volunteer, after the case worker said that he could say anything in their session, that his daddy stuck his wee-wee in his butt, indicating with his finger. The way that these revelations were made and viewing the child's interaction, the Court found his statements to be very believable. The Court also found his demonstration of oral sex to be very believable.

The Court also notes that after Lucien talked about the situation with his father, he became very sad. He put his hands up around his ears, turned away, looked down, and then he re-engaged.

This court finds that the strongest evidence that sexual abuse of Lucien by Jeremy did occur includes both the child's verbal disclosure of same as well as the sexually explicit behavior that he displayed. The verbal remarks by a child of such a young age, his sexualized behavior which included overt sexual acts directed towards other children, his continued masturbation in public, and his expressed fear that something would happen to his father are all examples of this evidence.

12

Although Jeremy notes that he was never criminally charged as a result of these allegations, such is not determinative in these proceedings.

Jeremy continues to maintain that Shannon fabricated the sexual abuse allegations in furtherance of her goal of obtaining custody and relocating to Illinois with the children. In this regard, this court acknowledges Jeremy's adamant denial of those allegations. We also acknowledge that there exist some discrepancies within the testimony of Lucien and that of the witnesses. However, the trial court, as the trier of fact, was clearly in the best position to make a credibility call. Particularly with regard to its credibility determination, and given Jeremy's contentions that Shannon "coached" Lucien to say these things, and that Shannon and her family and friends' motivation for the allegations of sexual abuse stemmed from Shannon's desire to relocate to Illinois, the trial court expressly noted the following:

> Let me say in closing that I didn't find any collusion in this case between Ms. Varney or her family members, or her friend, Karen Tobias. There was absolutely no evidence of that. The Court also found that these three ladies all seem to have a great deal of empathy for Mr. Varney. They seem to know that he was a damaged individual as a result of his own childhood. I do not believe that they have conspired to put this man in criminal jeopardy or to deny him contact with his children. I believe he told them the things that he said. I believe that they truly feel sorry for him, would like to see him get help, that Ms. Varney would like to see him get help, and, if in the children's best interest, be restored to a relationship with them. That is this Court's impression.

Considering the record of these proceedings, and for all of the reasons set forth above, we find no manifest error in the trial court's finding by clear and convincing evidence that Jeremy sexually abused Lucien, thereby triggering the mandatory prohibition of all visitation by Jeremy with the children as set forth in La.R.S. 9:364(D).

13

***Motion and Order for Attorney Fees & Damages***

Shannon has filed with this court a pleading entitled Appellee's Motion for Attorney Fees & Damages wherein she seeks "attorney[] fees and damages" pursuant to La.Code Civ.P. art. 2164[7] and La.R.S. 9:367.[8] This court has opined that "an appellate court does not have jurisdiction to consider a request for damages for a frivolous appeal absent an appeal or an answer to an appeal. *See* La.Code Civ.P. arts. 2121 and 2133." *Bower v. Menard*, 11-1005, pp. 5-6 (La.App. 3 Cir. 2/1/12), 84 So.3d 691, 694-95. We find Shannon's motion to be tantamount to filing an answer to appeal and we will consider it as such.

"[D]amages for frivolous appeal will not be awarded unless it appears that the appeal was taken solely for the purpose of delay, that serious legal questions are not raised, or that the attorney does not seriously believe in the position he advocates." *Miller v. Village of Hornbeck*, 10-1539, p. 12 (La.App. 3 Cir. 5/11/11), 65 So.3d 784, 792 (citing *Robinson v. Thornton*, 96-1329 (La.App. 3 Cir. 10/29/07), 705 So.2d 745, *writ denied*, 97-2963 (La. 2/6/98), 709 So.2d 739). Considering the matter before us, we deny Shannon's motion for damages for frivolous appeal.

---

[7] Louisiana Code of Civil Procedure Article 2164 provides:

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

[8] Louisiana Revised Statutes 9:367 provides:

In any family violence case, all court costs, attorney fees, evaluation fees, and expert witness fees incurred in furtherance of this Part shall be paid by the perpetrator of the family violence, including all costs of medical and psychological care for the abused spouse, or for any of the children, necessitated by the family violence.

14

Louisiana Revised Statutes 9:367 clearly requires that the perpetrator pay "all court costs, attorney fees, evaluation fees, and expert witness fees incurred in furtherance of" the Post-Separation Family Violence Relief Act. Accordingly, we find that Shannon is entitled to attorney fees for work done on appeal and award her $3,500.00 for same.

## DECREE

The judgment of the trial court terminating all visitation of Jeremy A. Varney with his minor children is affirmed. Additionally, judgment is rendered herein in favor of Shannon M. Varney and against Jeremy A. Varney in the amount of $3,500.00 representing attorney fees for work done on appeal in addition to all costs of this proceeding.

**AFFIRMED AND RENDERED.**