759 So.2d 219 (2000)
Calvin Baxter DEASON
v.
Leslie Kim Leflore DEASON.
No. 99-1811.
Court of Appeal of Louisiana, Third Circuit.
April 5, 2000.
Donald D. McKeithen, Jr., Attorney at Law, Columbia, LA, Counsel for Defendant/Appellant, Leslie Kim Leflore Deason.
Mark L. Talley, Attorney at Law, Jena, LA, Counsel for Plaintiff/Appellee, Calvin Baxter Deason.
*220 Court composed of Judge ULYSSES GENE THIBODEAUX, Judge OSWALD A. DECUIR and Judge ELIZABETH A. PICKETT.
THIBODEAUX, Judge.
This appeal concerns a determination of pre-divorce domiciliary child custody. Primarily, Leslie Deason, the child's mother, contends that the trial court fallaciously concluded that it was in the best interest of the child to award custody to the father, Calvin Deason, rather than to her. She appeals. Finding no error in the trial court's judgment, we affirm.

I.

ISSUE
We shall decide whether the trial court abused its discretion in granting domiciliary child custody of Jared Deason to his father, Calvin Deason, rather than to his mother, Leslie Deason.

II.

FACTS
Jared Deason was born to Calvin Deason and Leslie LeFlore on February 8, 1994. The parents married in March 1994 and established a matrimonial domicile in LaSalle Parish, Louisiana. Their home was a mobile home neighboring the home of Calvin's parents. The Deasons eventually traded homes with Calvin's parents for more space. The Deasons lived together with their child and Leslie's children from a prior marriage until January 1995, when Leslie Deason moved to Tyler, Texas.
Upon their separation, Calvin filed for divorce and was granted temporary custody of Jared. Although there was no formal court order, the parties understood that they had joint custody of Jared and began to alternate physical custody biweekly. The court ordered psychiatric evaluations of both parents and, based on the test results, ordered both Calvin and Leslie to attend anger management counseling. The parties reconciled.
Calvin filed a subsequent divorce petition on February 26, 1999. Leslie was served in Texas. Leslie also filed a petition for divorce in Smith County, Texas.
In written reasons for judgment, the trial court noted that since Louisiana was Jared's home state, consideration of relocation to Texas compelled application of La.R.S. 9:355.1 et seq. After thorough analysis of the factors in this statute, the trial court determined that it was in the best interest of the child that the parents share joint custody, with Calvin designated the domiciliary parent. Leslie brought this appeal.

III.

LAW AND DISCUSSION

Standard of Review
An appellate court may not set aside a trial court's finding of fact absent manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). This is especially applicable in a child custody dispute wherein appellate courts accord substantial deference to the trial judge's conclusions. "The trial judge is in a better position to evaluate the best interest of a child from his observance of the parties and the witnesses and his decision will not be disturbed on review absent a clear showing of abuse." State in the Interest of Sylvester, 525 So.2d 604, 608 (La.App. 3 Cir.1988) (citing Bagents v. Bagents, 419 So.2d 460 (La.1982)).
Leslie asserts that the trial court erred in determining that it was in the best interest of Jared that Calvin be awarded custody under the relocation factors of La. R.S. 9:355.12(1-8).
The factors used in determining contested relocation are set forth in La.R.S. 9:355.12 as follows:
In reaching its decision regarding a proposed relocation, the court shall consider the following factors:

*221 (1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child's life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child's preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) Any other factors affecting the best interest of the child.
The trial court conducted substantial analysis of each of these factors. The trial court explained its conclusions in written reasons for judgment as follows:
The record established that the residences of both parents were adequate for Jared. But, the mother's residence has been without air conditioning for over a year, with this deficiency being described as economic in origin. At the present time, this is a significant factor given the extremely hot temperatures experienced in the last month, with predictions for a heat wave to continue to persist.
The evidence established that the mother and her family are more involved in organized religious activity. The father only casually attends churches of his religious denomination, while the mother is a member and regularly attends one specific church of her religious denomination.
Both parents and Jared's extended families on both parents' sides demonstrated highly significant love, affection and emotional ties. Both parents seem to show a great deal of responsibility for Jared's care and rearing. Both have actually exercised a significant amount of "hands on" parenting up to this point.
Both parents appear to be in relatively good physical and mental health, although neither seems to be suited for the extreme compromises required of spouses to allow difficult times to be weathered without breakdowns of the marriage relationship.
At the time of the hearing, both parents seemed to be willing and able to facilitate and encourage a close and continuing relationship between the child and the other parent. Other than Mrs. Deason secreting the child for seven (7) weeks, Mrs. Deason appears to be more accomplished and flexible in this respect than Mr. Deason. Mr. Deason is more possessive of Jared and has not been fully sympathetic to the mother's lessened financial ability and greater time constraints.
Both parents possess the moral qualities which will not adversely affect the welfare of the child.
The child is apparently comfortable in the environment provided by his parents, both of which seem to be stable and permanent.
Both parents have the disposition to provide Jared with food, clothing, medical *222 care, and other material needs. At the present time, the father seems to be better able than the mother to meet these needs, but the court perceives this as situational, which should change after Mrs. Deason completes her formal education, becomes licensed and secures meaningful employment as a nurse on a regular (although cyclical) schedule.
In considering the allocation of physical custody, the court has considered the good nature, quality, extensive involvement with and duration of Jared's relationship with both of his parents and their respective families. The court finds that Jared has a significant relationship with both of his parents and their families. The court also considers Jared's needs, his developmental stage, and age and the likely impact relocation will have on him. The court believes that Mr. Deason has a significantly greater opportunity, at the present time, to minister to Jared's needs because, the mother is intensely involved in completing her schooling. At this time, with Jared starting into school for the first time, he should have the greater significant attention of a parent who must be in a position to commit a significant amount of time to assist the child in both the education [sic] and social aspects of school.
Mr. Deason's family gathers regularly and frequently at his parent's residence which is just next door. This is a plus for Jared to be exposed in this fashion to his extensive [sic] family. While Mrs. Deason's family appears to be close knit also, the frequency of their regular gatherings is not as often as the father's family.
The court does not perceive that relocating the child to Tyler, Texas will enhance the quality of his life generally. The quality of life, including employment and educational opportunity for Mrs. Deason appears to be better though.
. . . .
For the time being, until the mother finishes her schooling and obtains her certification and licensing, she will not be in an economic position to pay child support. Also, she will need at least some time to earn the money to air condition her house for her benefit and that of all of her children, during this time, her school and work schedule will be hectic and she needs to be in a position where she can devote significant time to this endeavor.
The father is in a relatively better economic position and the court will require him to furnish Jared's transportation for visits until the end of February, 2000, which should afford Mrs. Deason some time to "catch up" with her finances.
This case presented the court with an extremely difficult decision because of the near equality of the parents' and their respective families' attributes. If both parents still lived in LaSalle Parish, the court would have divided Jared's custody nearly equally.
Both the Louisiana Legislature and the Louisiana Supreme Court have made it abundantly clear that the primary consideration and prevailing inquiry is whether the custody arrangement is in the best interest of the child. See Evans v. Lungrin, 97-541, 97-577 (La.2/6/98); 708 So.2d 731. Upon close review of the record and an independent analysis of the factors identified in La.R.S. 9:355.12, we find that the trial court was eminently correct in awarding joint custody to the parents with Calvin Deason designated as the domiciliary parent.

IV.

CONCLUSION
Accordingly, the judgment of the trial court is hereby affirmed. Leslie Deason is cast with costs of this appeal.
AFFIRMED.
PICKETT, J., concurs.