STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-51


ANGELA DUCOTE RANDOLPH

VERSUS

JONATHAN RANDOLPH


************

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, DOCKET NO. 2004-7035-B
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and James T. Genovese, Judges.


AFFIRMED.


Henry H. Lemoine, Jr.
607 Main Street
Pineville, Louisiana 71360
(318) 473-4220
COUNSEL FOR DEFENDANT/APPELLANT:
    Jonathan Randolph

Angelo J. Piazza, III
Post Office Box 429
Marksville, Louisiana 71351
(318) 253-6423
COUNSEL FOR PLAINTIFF/APPELLEE:
    Angela Ducote Randolph

**GENOVESE, JUDGE.**

In this child custody case, the father, Jonathan Randolph, appeals the trial court's judgment reaffirming the mother, Angela Ducote Randolph, as the primary custodial parent of their minor child, Abigail Randolph, granting the father specified visitation, and maintaining the amount of the father's prior child support obligation. For the following reasons, we affirm.

## FACTS

Angela Ducote Randolph and Jonathan Randolph were married on October 23, 1999, in East Baton Rouge Parish. One child was born of the marriage, Abigail Randolph, on July 16, 2003. The parties continued to reside and work in East Baton Rouge Parish until 2004, when Mrs. Randolph moved to Avoyelles Parish. Mr. Randolph remained in East Baton Rouge Parish.

On October 27, 2004, Mrs. Randolph filed a petition for divorce in Avoyelles Parish where she was then residing. On October 28, 2004, Mr. Randolph filed a petition for divorce in East Baton Rouge Parish, the parish of their matrimonial domicile, where he continued to reside. The suit in East Baton Rouge Parish was later dismissed, and the matter remained and proceeded to trial in Avoyelles Parish. The parties have maintained their respective domiciles in East Baton Rouge and Avoyelles Parish.

Mrs. Randolph and Mr. Randolph both sought joint custody of their minor child, with visitation privileges to be granted to the other parent, and with an award of child support to be determined. Thereafter, a consent judgment was entered into

1

by the parties,[1] granting the parties joint custody and naming Mrs. Randolph as the primary custodian of the minor child, subject to certain visitation rights afforded Mr. Randolph. By virtue of this consent judgment, Mr. Randolph was ordered to pay child support in the amount of $842.00 per month.

On May 13, 2005, the trial court signed a judgment granting the parties a judgment of divorce. Among other matters not relevant to the present appeal, said judgment awarded joint custody to both parents, named Mrs. Randolph the primary domiciliary parent, granted Mr. Randolph reasonable visitation as detailed therein, and ordered that Mr. Randolph continue to pay child support in the amount of $842.00 per month.

From the inception of these proceedings, Mr. Randolph alleged that Mrs. Randolph had a drug abuse problem. These allegations were set forth as grounds for his being named the primary domiciliary parent and Mrs. Randolph being granted restricted and supervised visitation. These allegations remained at the forefront of the instant litigation. Notably, two days after the trial court signed a consent judgment relative to domiciliary status and visitation, the trial court signed an *ex parte* order dated May 15, 2006, ordering that both Mrs. Randolph and Mr. Randolph submit to drug testing.[2]

---

[1]Although the appellate briefs of both parties reference a January 25, 2005 consent judgment, we note that the trial court also signed a second consent judgment on February 3, 2005. Both judgments reference the incidental matters which came for hearing on January 21, 2005, and both contain the same orders of the trial court. However, the January judgment provides that Mrs. Randolph withdraws her "pending claims for temporary spousal support" and dismisses the hearing scheduled for January 25, 2005; whereas, the February judgment contains language that she withdraws her "pending claims for interim spousal support" and dismisses the rule thereon set for January 31, 2005.

[2]The *ex parte* order states that it is being issued based upon correspondence received by the trial court. The correspondence, dated May 11, 2006, is authored by Mrs. Randolph's father, Larry Ducote, who recited a history of drug abuse by his daughter and requested that the trial court order Mrs. Randolph to be tested for drugs.

On July 5, 2006, Mr. Randolph filed a rule for change of custody, asserting that there had "been changes in circumstances such that it [was] now in the best interest of the minor child that [Mr. Randolph] be granted sole custody of the minor child and [Mrs. Randolph] be granted limited supervised visitation. . . . " The pleading filed by Mr. Randolph, being twelve pages in length, set forth numerous allegations including, but not limited to, Mrs. Randolph's refusal to allow him visitation, threats by Mrs. Randolph to kill him and his current wife, warrants being issued for Mrs. Randolph's arrest, and her failure to secure proper medical treatment for the minor child. Mr. Randolph further asserted therein that Mrs. Randolph "demonstrated an inability to provide a stable and adequate home for Abigail[,]" and he requested that the trial court order Mrs. Randolph to be evaluated by a mental health professional and undergo drug testing. In response thereto, the trial court set a hearing on the rule for July 17, 2006. Following a telephone status conference, the trial court issued a notice of reassignment continuing the July 17, 2006 hearing date to November 6, 2006, and ordering Mrs. Randolph to undergo drug testing on a weekly basis pending further orders of the court.

In a counter rule, Mrs. Randolph asserted that she was "the target of repeated harassment from [Mr.] Randolph[,]" and she prayed that he be held in contempt of court. She further alleged that the visitation schedule in effect was "over burdensome and should be restricted to less time (days) afforded to [Mr.] Randolph." Mrs. Randolph also sought an increase in child support due to her unemployment.

Following a setting conference, on September 14, 2006, the trial court issued another order. This order mandated that both parents be given certain telephone contact with the child and that Mrs. Randolph continue to undergo the court-ordered

3

drug testing.

At the November 6, 2006 hearing on the rule, the parties reached an agreement which became the substance of a November 13, 2006 interim consent judgment. This judgment again mandated court-ordered drug testing for Mrs. Randolph. Additionally, the trial court ordered that Mrs. Randolph, her mother, Susan Maillet, Mr. Randolph, his current spouse, Dana Randolph, and the minor child all undergo psychological evaluations with Dr. John Simoneaux, a psychologist.

The trial court subsequently signed an order dated November 15, 2006, terminating the required drug testing for Mrs. Randolph based upon the negative results of November 6, 2006, which had been provided to the trial court.

Mr. Randolph, Dana Randolph, and the child were evaluated by Dr. Simoneaux on February 22, 2007. Dr. Simoneaux issued his psychological evaluation of these individuals on February 28, 2007.

On May 8, 2007, the trial court held a status conference for the purpose of setting the matter for trial. A trial date of August 15, 2007 was assigned.

On July 25 and July 26, 2007, Mrs. Randolph, Susan Maillet, and the child met with Dr. Simoneaux for the court-ordered psychological evaluation. Dr. Simoneaux issued a second report on August 8, 2007.

Following trial on August 15, 2007, the trial court awarded the parties joint custody of their minor child with "primary custody of the minor for the year remaining and for the year of 2008" to Mrs. Randolph and granted Mr. Randolph detailed visitation rights as set forth in the judgment of October 3, 2007. Among other orders, the trial court ordered "that child support shall remain in effect as per previous judgment of [the] court except that beginning January 1, 2008, child support

4

monthly payment shall be reduced by one-half (1/2) for the months of June and July,

with all rights reserved unto the parties to recalculate upon change of income. . . ."

It is from this judgment that Mr. Randolph appeals.

## ASSIGNMENT OF ERRORS

Mr. Randolph presents the following assignments of error for our review:

1.    The trial court erred in not granting the change of custody of
      Abigail by naming [Mr. Randolph] as the primary domiciliary
      parent, or at least not granting [Mr. Randolph] more liberal
      visitation with Abigail.

2.    The trial court erred in the calculation of child support.

## LAW AND DISCUSSION

**Standard of Review**

> An appellate court may not set aside a trial court's findings of fact
> in absence of manifest error or unless it is clearly wrong. *Stobart v.
> State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549
> So.2d 840 (La.1989). This is especially applicable in a child custody
> dispute wherein appellate courts accord substantial deference to the trial
> judge's conclusions. "The trial judge is in a better position to evaluate
> the best interest of a child from his observance of the parties and the
> witnesses and his decision will not be disturbed on review absent a clear
> showing of abuse." *Deason v. Deason*, 99-1811, p. 2 (La.App. 3 Cir.
> 4/5/00), 759 So.2d 219, 220 (citations omitted). Both the Louisiana
> Legislature and the Louisiana Supreme Court have made it abundantly
> clear that the primary consideration and prevailing inquiry is whether
> the custody arrangement is in the best interest of the child. *See Evans
> v. Lungrin*, 97-541, 97-577 (La. 2/6/98), 708 So.2d 731.

*Steinebach v. Steinebach*, 07-38, p. 4 (La.App. 3 Cir. 5/2/07), 957 So.2d 291, 294.

Although, in his appellate brief, Mr. Randolph begins by citing the "clearly

wrong or manifestly erroneous" standard of review, he asserts therein that the trial

"court failed to apply the appropriate standard in its decision in this matter." When

a trial court applies an improper legal standard, an appellant is entitled to a *de novo*

review of the record by the appellate court. *Evans*, 708 So.2d 731. We do not find

5

that the trial court committed legal error; thus, we will not disturb the determination of the trial court on the issue of child custody absent a clear abuse of discretion.

**Domiciliary Custody and Visitation**

The trial court was throughly apprised of the ongoing disputes between the parties. The trial court was also well aware of the allegations of drug abuse on the part of Mrs. Randolph, having previously issued orders requiring that she undergo continued drug testing. These allegations were at the heart of the custody proceedings, coupled with issues of providing a stable environment for the minor child.

The record is clear that Mrs. Randolph had a history of a drug addition. It was for this reason that she was ordered by the trial court to undergo urinalysis and hair follicle drug screening. It is noted that Mrs. Randolph was a pharmacist and that Mr. Randolph expressed concern about her having professional knowledge that enabled her to "beat" the tests. However, it is unrefuted that Mrs. Randolph had negative results on all of the tests that she underwent, and there was simply no evidence adduced at trial to substantiate Mr. Randolph's allegations of continued drug abuse other than his perception of her "erratic behavior."

The record is also clear that Mrs. Randolph and Mr. Randolph have demonstrated an inability to communicate with each other, and they do not agree on issues involving their minor child. Each parent has accused the other of providing inadequate medical care to the point of involving child protective services, and each parent has been responsible for making visitation exchanges difficult and confrontational. On occasion, the police have been called which, more than once, resulted in Mrs. Randolph's arrest. Each parent has not always facilitated telephone

6

contact between the child and the other parent. It is apparent that both parties speak critically and inappropriately of the other in the presence of the child and engage in heated verbal disputes in the presence of the child. Examples of such negative behavior on the part of both parents appear throughout the record.

The trial court ordered that Mr. Randolph, his current wife, Dana Randolph, Mrs. Randolph, her mother, Susan Maillet, and the child all be evaluated by Dr. Simoneaux. Dr. Simoneaux also had the benefit of witnessing the child with each of her parents at the time of their respective evaluations. Ultimately, Dr. Simoneaux issued two very detailed reports replete with historical and present information involving these individuals and, ultimately, provided his recommendations to the trial court relative to the custody dispute. Although recognizing that it was not bound by the recommendations of Dr. Simoneaux, the trial court apparently placed considerable weight on his expert opinion.

Dr. Simoneaux's first report following his visit with Mr. Randolph, Dana Randolph, and the child states that the child "enjoys a very good relationship with her father and stepmother." According to Dr. Simoneaux, "[t]he psychological testing, for the most part, does not identify any serious difficulties that could get in the way of [Mr. Randolph] or [Dana Randolph] serving as proper parents. . . ." Dr. Simoneaux found that "they are involved in a committed, marital relationship. They both have stable jobs and they have a new baby."

Dr. Simoneaux issued a second report following his meeting with Mrs. Randolph and Susan Maillet. Dr. Simoneaux found that the child "[o]bviously" had a "very close, enduring, and loving relationship" with these individuals. Dr. Simoneaux, in relating some of the history between the parties, commented and

7

expressed concern about the "kind of conversation that occurs in the presence of the child," and he found it "very clear that, despite their protestations, these parents are willing to discuss these very contentious matters in front of the child." Based upon certain positive comments made by Mrs. Randolph on the relationship between Mr. Randolph and their child, Dr. Simoneaux opined that it "reflect[ed] positively on the fact that [Mrs. Randolph] may well be able to encourage the child's relationship with the father." To the contrary, in his prior report, Dr. Simoneaux found that Mr. Randolph and his current spouse "express very negative views" about Mrs. Randolph such that he found it "hard to imagine given what they believe about [Mrs. Randolph] that they could be encouraging of [Mrs. Randolph's] relationship with [the child]."

Dr. Simoneaux stated that it was "apparent from [his] evaluation that [Mrs. Randolph] has been a primary caregiver for this child and that the child truly sees her as the 'psychological parent.' As a consequence, it would be very disruptive to this child's emotional well being to disrupt that relationship severely." On the question of domiciliary custody, Dr. Simoneaux recommended "that [Mrs. Randolph] remain the primary domiciliary parent and that she maintain primary physical custody of the child."

In addition to the foregoing, the trial court also considered the testimony of the parties and witnesses called on their behalf. Based upon our review of the record, we find no abuse of discretion in the trial court award designating Mrs. Randolph as the domiciliary parent in this joint custody arrangement.

Mr. Randolph also complains that the visitation awarded to him by the trial court is too limited. We note that Dr. Simoneaux found no reason to restrict Mr. Randolph's time with his child, and he recommended that he have "liberal visitation."

8

As noted by the trial court, the difficulty with visitation results from the "geographical separation of the parties." However, the trial court agreed with Dr. Simoneaux that there is "nothing to suggest that [Mr. Randolph's] time should be severely restricted . . . because he does appear to be a good father" and agreed that liberal visitation was appropriate. Having reviewed the detailed visitation plan set forth by the trial court, we cannot say that the trial court erred in that regard. We, therefore, affirm the visitation plan as ordered in all respects.

**Child Support**

Mrs. Randolph sought an increase in the child support award due to her unemployment. Mr. Randolph contends that the trial court erred in its calculation of child support. We find no merit in either of these contentions.

In its oral reasons, the trial court stated that "[c]hild support has been deferred but the issue remains if the parties send me correspondence indicating that they have not worked anything out." The record then reflects that the formal judgment ordered "that the child support shall remain as per previous orders of the court." Thus, it appears from the record that the trial court did not in fact make a child support calculation. Instead, the amount of the child support award was that which had been previously agreed to by the parties and that which was the subject of the prior consent judgment.

We note that the only evidence relative to the issue of child support presented at the trial of this matter was Mrs. Randolph's unemployed status, stemming from Mr.

Randolph's assertions that she was voluntarily unemployed.[3] There was no evidence adduced or presented on the issue of income and the application of same to the child support guidelines.  For the foregoing reasons, we affirm the trial court's judgment relative to child support.

It is noteworthy that the issues of custody, visitation, and child support are never permanent and are always subject to change based on the circumstances of the child and her parents.  The parties are entitled to readdress these issues should future circumstances warrant same.

## **DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed in all respects.  Costs of the present appeal are assessed against Jonathan Randolph.

**AFFIRMED.**

---

[3]Louisiana Revised Statutes 9:315.11(A) states:

> If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years.  In determining the party's income earning potential, the court may consider the most recently published Louisiana Department of Labor Wage Survey.