# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1230

JUSTIN JAMES KELLY

VERSUS

STACI MARIE KELLY

**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. C-2011-375
HONORABLE JOEL GERARD DAVIS, DISTRICT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of Marc T. Amy, Shannon J. Gremillion, and John E. Conery, Judges.

**AFFIRMED.**

K. Ray Rush
Attorney at Law
P. O. Box 704
Oakdale, LA 71463
(318) 335-2759
COUNSEL FOR PLAINTIFF/APPELLEE:
    Justin James Kelly

Chad Guidry
Attorney at Law
P. O. Box 447
Kinder, LA 70648
(337) 738-2280
COUNSEL FOR DEFENDANT/APPELLANT:
    Staci Marie Kelly

**GREMILLION, Judge.**

The defendant-appellant, Staci Marie Kelly, appeals the trial court's judgment awarding primary domiciliary custody of the minor child to the defendant/appellee, Justin James Kelly. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Justin and Staci were married in September 2004. One child was born of the marriage, Aubrey, whose birthday is July 5, 2007. Justin filed for divorce in August 2011, requesting joint custody naming him the domiciliary parent. In August 2012, Staci filed a Motion for In-Camera Inspection of a juvenile proceeding initiated by the Department of Children and Family Services (DCFS) in December 2011. Staci urged that the "allegations regarding child custody which are at issue in the current case are identical to those alleged and addressed in the juvenile proceeding, J-2011-106."

Following an August 2012 hearing, the trial court entered a Judgment on Rule awarding joint custody of the child designating Justin as the domiciliary parent and awarding Staci visitation every other weekend. Staci now appeals.[1]

## ISSUES

Staci assigns as error:

1. Appellant contends that the Trial Court erred or abused its discretion in awarding joint custody with Mr. Kelly designated as the domiciliary and in its physical custody allocation.

2. Appellant contends that the Trial Court erred in ruling that the documents contained in the 33rd Judicial District Court's Juvenile Docket no J-2011-106 were inadmissible in the present case.

---

[1] In October 2012, Justin filed a Petition for Judgment of Divorce in Accordance with La.C.C.Cp. Art. 3952 urging that 365 days had elapsed since the service of the petition for divorce in August 2011. A hearing was scheduled for November 7, 2012.

**EVIDENCE**

The only matters before the court at the August 13, 2012 hearing were child custody, child support, and tax deductions. The parties were not divorced at the time of this hearing.

Staci testified Aubrey was six years old at the time of trial and had a thirteen-year-old half brother. She said that Aubrey had resided in Elizabeth, Louisiana, her entire life and that Justin's parents, Ken and Vickie Kelly, lived two houses down from their marital residence. Staci said that Aubrey spent a lot of time with her grandparents.

Staci admitted to "absenting herself" from her children over the course of five days in March 2011. She rented an apartment in Pineville, Louisiana, in May 2011, and was away from her children for a period of time in May and June. She further admitted to having an affair with a man named Kurt beginning in August 2011.

Staci admitted to repeatedly whipping Aubrey on her behind on May 20, 2011, such that marks and bruises remained because she "was trying to get her to go to bed and take her nap." She admitted to having an anger management problem and physically fighting with her husband and other adults, including Kelly, Kurt's wife. This incident occurred in front her children, and she received a citation for disturbing the peace. She admitted to later confronting Kelly and being rude to her at her place of employment, Dollar General, by inquiring if they were hiring.

Staci admitted that she caused Aubrey to be late for school so many times in pre-kindergarten and kindergarten that she was contacted by the District Attorney's office.

Staci then discussed a November 12, 2012 incident in which her son called 911 because she refused to unlock the bathroom door. She denied that she was suicidal.

Staci testified that she occasionally smoked marijuana and took prescribed Ativan and Lortab "when she was on her cycle." She was also taking Celexa for anxiety and depression. Additionally, she was taking Adderall.

In another incident in early December 2011, Staci admitted to setting a community-owned camper on fire that was being stored on Ken and Vickie's property because she was mad at Justin. Later that month, she saw Justin leaving a restaurant in Alexandria, Louisiana and began following him and honking her horn at him. She further admitted to "violently striking" her then-twelve-year-old son on December 20, 2011, with her hand, busting his lip and causing it to bleed. She admitted to sitting on top of him. Staci's mother came and got the boy and took him to the doctor.

On December 27, 2011, DCFS removed Aubrey and her half brother from Staci's home. Aubrey was placed in the custody of Justin's parents while her half brother went to Staci's mother's house. At this point in time, Justin was living in Alexandria with his girlfriend. Staci testified that DCFS required that she take education classes on the effects of drug use, undergo family assessments, and complete a ten-week anger management course. She stated that she successfully completed the classes. Over a six-month period from December 2011 through August 2012, Staci said that Aubrey had slept over at her house about five times.

Staci said she was currently residing in Woodworth, Louisiana in a three-bedroom trailer with her son. She said that she had no family or friends there and did not attend church there. She said Aubrey would attend school in Woodworth if she were granted domiciliary custody. Staci said she received her associates

3

degree in May 2012, and was working at Cabrini Hospital as a nurse. She said she works thirty-six to forty hours a week in twelve-hour shifts earning $21.75 per hour.

Staci said that Woodworth is about thirty minutes from Elizabeth. She testified that the Kellys allow her to see Aubrey. She said that Aubrey has lived with her half brother her entire life prior to DCFS taking the children away.

Vickie Kelly testified regarding various incidents that Staci admitted to. Vickie kept a calendar of all the days Staci was absent from Aubrey, which amounted to several days in March, May, June, August, October, and November 2011. Vickie said that Staci had never been on a single field trip with Aubrey nor did she take her to her first day of kindergarten. She said that Aubrey was now in first grade at the same school she attended for pre-kindergarten and kindergarten. Vickie was of the opinion that Staci had become obsessed with Kurt, even admitting to her that she would die for him. She testified that Aubrey's behind was solid purple from the whipping, and that Staci had beaten her son several times in Vickie's presence. Vickie discussed an incident that occurred the week before when they were leaving the courthouse. Staci confronted Justin and was verbally enticing him to hit her. Vickie said she was very angry, just like before.

Vickie said that Aubrey is very happy living in Elizabeth, but Vickie wants Aubrey to have a great relationship with her mother whom she loves. Aubrey regularly attends church in Elizabeth. Vickie said Justin lives in the former marital home next door with his girlfriend, Amy Jowers.

Ken testified to an incident he witnessed involving Staci's son. He said that Staci was "very aggressive" and "very mean" and hit him with her fist. He further testified that he witnessed Staci hitting Justin with a closed fist. Ken stated that after leaving court the week before, Staci "got up in to Justin's face and started

4

hollering and screaming at him for him to hit her." Ken said that he and Vickie would care for Aubrey on the occasions when Justin is away due to his work schedule. Both Ken and Vickie admitted that they had allowed Staci to see Aubrey and keep her overnight several times in the past two weeks leading up to trial.

Justin, who was twenty-eight at the time of trial, testified that he had worked for Baker Hughes INTEQ for the past five years as a MWD, or the person that conducts measurements while drilling on a rig. He admitted his work schedule is erratic, as he travels to different locations to complete jobs that vary in length. He said that usually he is at work, away from home, for approximately two weeks and home for two weeks. Due to the family situation he has recently negotiated a working condition that he cannot be more than two hours away from home. A letter from Baker Hughes agreeing to this was admitted into evidence. Justin said that once DCFS became involved, he was also required to complete the programs due to his occasional synthetic marijuana usage. He successfully completed the program and denies any current usage of synthetic marijuana.

Justin testified that his new girlfriend has been living with him for a month-and-a-half. He said they had been dating for four months, but had known each other for twelve years. Justin's paycheck stub was submitted into evidence indicating an income for 2011 of over $115,000.

Jackie Pitre, Staci's mother, testified that Staci's behavior had improved since DCFS became involved. She said that Staci was under a lot of stress dealing with the separation from Justin, living in Elizabeth near Justin's parents, and attending school. Jackie said she has no concerns now that Staci is able to care for her kids, and Aubrey wants to be with Staci and misses her half brother. She admitted that Aubrey has lived her entire life in Elizabeth, has friends there, and

5

attends school and church there. She further admitted on cross-examination that she and Staci had fist fights in the past when Staci was younger.

Dwight Pitre, Staci's father, testified that since DCFS's involvement, Staci has "calmed down a lot" and is not exhibiting the same kind of angry behavior. He did not feel that Aubrey would be in danger if she resided with Staci.

## DISCUSSION

### *Custody*

The law is well-settled that the trial court's finding in custody matters is entitled to great weight on appeal because it is in a superior position to assess the best interests of the child based on the testimony of the witnesses and parties. *AEB v. JBE*, 99-2668 (La. 11/30/99), 752 So.2d 756. On appeal, we will not reverse a trial court's custody ruling in the absence of an abuse of discretion by the trial court. *Id.* The best interests of the child are of the utmost importance. La.Civ.Code art. 131; *Deason v. Deason*, 98-1811 (La.App. 3 Cir. 4/5/00), 759 So.2d 219. In considering the child's best interests, pursuant to La.Civ.Code art. 134, the court may consider the following factors:

> (1) The love, affection, and other emotional ties between each party and the child.
>
> (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
>
> (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
>
> (4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
>
> (5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
>
> (6) The moral fitness of each party, insofar as it affects the welfare of the child.

(7) The mental and physical health of each party.

(8) The home, school, and community history of the child.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

At the conclusion of the hearing the trial court awarded joint custody to the parties and discussed the Article 134 factors. It found that factors one and two equally favored both parents. Regarding factor three, the trial court found that Justin was in a better position to provide simply because he makes substantially more money than Staci. The trial court found that factor number four was significant, stating:

> I think that one is a no-brainer. I think if anyone is being reasonable that they will fully understand that Aubrey has lived her whole life in Elizabeth. All of her family, -- well, most of the family support she has enjoyed is there, as well as her school, her friends, her church family, things such as that are there. And so, really, that favors her staying or that the father be given custody to maintain that.

The trial court did not find factors five or six to be significant. The trial court expressed some reservations about Staci's mental health, noting her sometimes aggressive and violent tendencies, and found that factor seven would be favorable to the father. Factor eight would favor the father as discussed above. The trial court found the child was too young to express a preference pursuant to factor nine. It found that both parents would facilitate a relationship under factor ten and that factor eleven was not a concern. Regarding the care previously exercised, the trial court found that both parties cared for Aubrey, but obviously

7

once DCFS became involved, the grandparents stepped in. The trial court ultimately concluded that domiciliary custody would be awarded to Justin.

Having reviewed the record, we find no abuse of discretion in the trial court's finding. Staci strongly argues that Aubrey will be deprived of seeing her half brother with whom she was raised with her entire life. We agree that is an unfortunate circumstance arising from the custody arrangement, but not one that outweighs the other concerns expressed by the trial court.

Clearly, Aubrey's support system is in Elizabeth. The biggest factor against having Justin named the primary domiciliary parent is his unpredictable work schedule. However, it was well-established that Justin's parents live right next door, have a long-standing and close relationship with Aubrey, have cared for Aubrey extensively in the past, and would care for Aubrey in his absence. Moreover, it was clear that Ken and Vickie had every intention of facilitating a close relationship between Aubrey and Stacie. Additionally, it was clear from the testimony that Staci had no reservations about leaving Aubrey in her grandparents' care for extended periods of time, even when Justin was away at work.

There were no allegations that Justin was ever violent toward Aubrey or her half brother. On the other hand, Staci readily admitted the violence she displayed toward her children. While it is true that Staci completed a ten-hour anger management course as required by DCFS, she was still exhibiting angry and volatile behavior toward Justin in the presence of Aubrey just a week before as the parties left the courthouse. Considering those facts and the mental health reservations noted by the trial court, the trial court did not err in finding it was in Aubrey's best interest to grant Justin primary domiciliary status. This assignment of error is without merit.

*Admissibility of Document*

At the end of the hearing, Staci's counsel moved to have the entire DCFS record submitted into evidence. The trial court denied the motion noting "You have already gone through the case plan with the people, I mean with each of the parties. And so, there is really no need for it. I know the case very well."[2] We agree. Admission of the document into evidence seems redundant at best since all the parties testified openly to DCFS's involvement and the outcome. Staci offers no argument as to what these documents would prove in her favor. Moreover, a trial court's discretion in whether to admit certain evidence will not be reversed absent a clear showing of abuse of discretion. *Slate v. Miles*, 402 So.2d 644 (La.1981). Accordingly, this assignment of error is without merit.

## CONCLUSION

The judgment of the trial court awarding joint custody with primary domiciliary status given to the plaintiff/appellee, Justin James Kelly, is affirmed. All costs of this appeal are assessed against the defendant/appellant, Staci Mari Kelly.

**AFFIRMED.**

---

[2] The judge in this matter also presided over the juvenile matter.

9