## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-396


DARCIA [DACIA] ROSEANNE MCCARTNEY

VERSUS

THOMAS A. MCCARTNEY


**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 81,778, DIV. A
HONORABLE VERNON BRUCE CLARK, DISTRICT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Shannon J. Gremillion, Judges.


**AFFIRMED.**

**S. Christie Smith, IV**
**The Smith Law Firm**
**P. O. Drawer 1528**
**Leesville, LA 71496-1528**
**(337) 239-2244**
**COUNSEL FOR INTERVENORS/APPELLEES:**
    **Ronnie McCartney**
    **Cindy McCartney**

**Thomas A. McCartney**
**WCC, Birch B2**
**P. O. Box 1260**
**Winnfield, LA 71483-1260**
**PRO SE:**
    **Thomas A. McCartney**

**Darcia [Dacia] Roseanne McCartney**
**218 Scott Road**
**Leesville, LA 71446**
**PRO SE:**
    **Darcia [Dacia] Roseanne McCartney**

**GREMILLION, Judge.**

The defendant, Thomas A. McCartney, appeals the trial court's judgment granting sole custody to the plaintiff, Dacia R. McCartney.[1]  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2011, Thomas was sentenced to serve ten years at hard labor for aggravated rape by engaging in oral sexual intercourse.  He is scheduled to be released on May 5, 2021.  Thomas had been on probation for illegal possession of stolen property greater than $500.00, which was revoked, and has been incarcerated since July 16, 2010.

Thomas and Dacia were married in September 2007.  Thomas and Dacia are the parents of two children.  Their first child, Amber Rose, was born in July 2008. In August 2009, Dacia filed a petition for divorce and requested that joint custody of Amber be granted.  An October 2009 stipulated judgment allowed for joint custody of Amber with Thomas paying $220.00 per month in child support.  Their second child, Izabella, was born in late October 2009.  The trial court issued a judgment in December 2009, confirming the award of joint custody and awarding the payment of $150.00 per month in child support.

In March 2010, Dacia filed a rule to suspend visitation urging that Thomas' visitation be terminated because of material changes in circumstances, to wit, that he used illegal drugs in the presence of the children and that he allowed persons of the opposite sex to stay overnight in the presence of the children.  A judgment of

---

[1]Plaintiff is referred to as Darcia, Dacia, and Dasha throughout the record.  Plaintiff testified at trial that the correct spelling is Dacia.  Dacia remarried in July 2012, taking the surname of her husband, Michael Spadafina.

divorce was granted in August 2010. It maintained the October 2009 stipulated judgment.

In April 2013, Thomas filed, pro se, a "Petition to Clarify Custodial Guardianship Rights," admitting his incarceration and noting his release into society in May 2021. Thomas also filed a "Motion to Suspend Action on Child Support Order."

In May 2013, Thomas' parents, Ronnie and Cindy, intervened and requested reasonable visitation with the children. In June 2013, Dacia filed a rule to modify custody and rule for contempt requesting sole custody of the children and noting Thomas' failure to pay child support for three years. In July 2013, Thomas filed a Rule to Modify Custody and Rule for Contempt complaining that Dacia had blocked his access to his children. Following an August 2013 hearing, the trial court rendered a judgment in September 2013, denying Thomas' motion to modify custody, denying his motion to terminate child support, finding Dacia in contempt for having overnight guests of the opposite sex, finding Thomas in contempt for non-payment of child support, and granting Dacia sole custody of the minor children with no visitation in favor of Thomas unless Dacia agrees to permit visitation. The judgment further granted Ronnie and Cindy visitation one Saturday every other month.

In September 2013, Thomas filed various notices of intent to seek writs with this court, which were procedurally defective for a variety of reasons. However, Thomas successfully filed a writ application with this court on December 20, 2013. We denied the writ but allowed the writ application to serve as an appeal in the interest of justice because time delays to file an appeal had expired.

## ISSUES

Thomas assigns as error:

1. The court failed to give good cause why joint custody was not granted.

2. The court failed to recognize the ex parte R-8542-2009 as the active child support plan and not find him in contempt for not paying child support.

## DISCUSSION

Dacia testified that Thomas made three child support payments and none since his arrest and incarceration in July 2010. She further stated that she had provided all care for her two children since said time. At the time of the hearing, Dacia testified that she and her husband, Michael, had lived together for six months before being married in July 2012.

Dacia said that Thomas had visited the girls a few times before his arrest in 2010, but had not seen them since. She said she had received no correspondence from him since he had been imprisoned. In 2012, Dacia removed the children from the approved visitation list at the prison because she did not want her young girls visiting "a man they hardly knew" in a prison setting. However, she said that Thomas' parents brought them anyway. Dacia said that she originally allowed the visitations to the jail on a trial basis starting in November 2011, but by May 2012, she did not believe it was in her daughters' best interest to visit the jail when Thomas' parents claimed to be taking the girls to the zoo but brought them to the prison instead.

Thomas testified on his own behalf in narrative form, stating that before his incarceration Dacia put his phone number on an automatic block. He further testified that she did not let him visit according to the schedule and that since his

incarceration he had sent letters to the kids every three months. However, he produced only one copy of a letter that he claims to have sent.

Thomas further testified that he felt qualified to make important decisions regarding his children because he had obtained his GED, was "currently and successfully completing the sex offender treatment program," and had completed Bible study through the mail. Thomas admitted that when the girls visited him in prison he told them that he was "at work temporarily." He admitted that he had only seen Izabella about twelve times since she was born, and she would be four in October.

Thomas denied that the only reason his parents were requesting visitation was so that they could bring the children to see him in prison. He admitted that he had been unable to exercise his visitation according to the plan because of his incarceration. The plan specified that if Thomas is unable to pick up the children he forfeits his visitation. However, he claims he can send his mother to pick up the children in order to exercise his visitation.

## JOINT CUSTODY

The best interests of the children are the primary consideration in making a child custody determination. La.Civ.Code art. 131, *Deason v. Deason*, 99-1811 (La.App. 3 Cir. 4/5/00), 759 So.2d 219. A parent seeking sole custody must prove by clear and convincing evidence that sole custody is in the best interest of the children. La.Civ.Code art. 132. A parent who is not granted custody or joint custody is entitled to visitation with the children unless the trial court finds that such visitation would not be in their best interest. La.Civ.Code art. 136. It is well-settled that the trial court is in a superior position to assess the best interests of the children based on the testimony of the witnesses and the parties. *AEB v. JBE*, 99-

4

2668 (La. 11/30/99), 752 So.2d 756. A trial court's decisions about custody matters will not be reversed in the absence of a clear abuse of discretion. *Id.*

Pursuant to La.Civ.Code art. 134, the trial court shall consider all relevant factors in determining the best interest of the children such as:

1. The love, affection, and other emotional ties between each party and the child.

2. The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

3. The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

4. The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

5. The permanence, as a family unit, of the existing or proposed custodial home or homes.

6. The moral fitness of each party, insofar as it affects the welfare of the child.

7. The mental and physical health of each party.

8. The home, school, and community history of the child.

9. The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

10. The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party

11. The distance between the respective residences of the parties.

12. The responsibility for the care and rearing of the child previously exercised by each party.

The trial court offered extensive oral reasons for judgment at the conclusion of the trial stating that it was denying Thomas' rule for modification because "certainly it hasn't been proven that he [Thomas] would be able to be a significant

5

party in any kind of arrangement regarding these two children on a regular basis while he's incarcerated and will be incarcerated for approximately the next ten years or so – eight to ten years." Thomas argues that this assertion is false because:

1. [Thomas] can have physical custody as granted by the plan and when not able to have the children over night, comply with the plan and give the mother first choice to have the children. The plan does not specify daytime hours and when not in the father's physical custody the Grandparents or the fathers [sic] choosing will be watching the children during daytime hours just as the mother would do if she was unable to watch the children in the daytime hours.

2. [Thomas] can maintain supervised visitation of the children every other weekend while incarcerated.

3. All information and descisions [sic] regarding the childrens [sic] welfare, education, etc. can be communicated between the parties by phone or mail while incarcerated.

4. [Thomas] is required to provide transportation and has proven that to be provided by Mrs. McCartney [presumably his mother]. The plan does not require [Thomas] to be present or to be the driver. Just as a child is put on a plane to see the other parent.

5. The tutorship and education of the children can also be obtained through mail or phone. Just as two parents that live a long distance apart.

6. [Thomas] can and will be able to comply to all requirements by the plan while incarcerated.

Thus, it appears that Thomas argues that he can maintain visitation at the prison every other weekend because his mother can bring the children to visit him for several hours and that he can make decisions regarding their welfare via the phone or the mail. We agree with the trial court's reasoning for finding that Dacia proved by clear and convincing evidence that sole custody in her favor was in her children's best interests:

> The Court is of the opinion that being isolated in that facility and not being able to interact with his children on a regular and frequent basis essentially makes him ineffective to be involved in that way with his children. By doing what he did and getting the sentence that

6

he did, he frittered away all the opportunity that he had to be that involved with his children. And, therefore, I find by clear and convincing evidence that the sole custody is the best interest of the children to be given to the mother in this case.

It was clear from the record that Thomas has been absent for the majority of these young girls' short lives since he has been incarcerated since 2010. Dacia has been their primary caregiver. Further, the trial court did not err in finding that visitation at the prison with a man they hardly know was not in their best interests. Thomas has no capacity to provide for these children due to his incarceration. He can provide neither financial nor emotional support to them. It is both impractical and against the children's best interests to require Dacia to attempt to confer with Thomas in prison regarding their daughters' educational, medical, social, and financial needs. Additionally, his conviction for aggravated rape calls into question his moral character. Accordingly, we find the trial court did not abuse its discretion in awarding Dacia sole custody of the children.

## CHILD SUPPORT

The trial court refused to terminate the child support award Thomas is required to pay, noting his obvious inability to pay while he is incarcerated, but finding that arrearages will continue to accrue while he is in prison.

We are unsure of what Thomas is attempting to argue in this assignment of error. He states that the trial court failed to recognize a particular order as being the correct one and that he was found in contempt for an order that was not active. He claims the trial court erred in that it did "not find him in contempt for not paying child support." The trial court did find him in contempt but ordered no punishment since Thomas is incapable of being gainfully employed. In his brief, Thomas states that he "is still obligated to pay arrears and is more than willing to

comply with payments when his income is sufficient to do so." Accordingly, we find this assignment of error to be moot since Thomas admits that he will be obligated to pay for child support that accrues while he is in prison.

In his conclusory paragraph, Thomas requests that Dacia "be punished for her contemptuous behavior." However, he does not assign any error regarding the contempt finding pertaining to Dacia. Although the trial court found Dacia in contempt for disobeying the court order by having her now-husband sleep over, it did not order any punishment. Although we need not address it, we find no error in that ruling.

## CONCLUSION

The judgment of the trial court granting the plaintiff-appellee, Darcia [Dacia] R. McCartney, sole custody of the two minor children, is affirmed. All costs of this appeal are assessed against the defendant-appellant, Thomas A. McCartney.

**AFFIRMED**.