| iPETERS, Judge.
This appeal arises out of a motion filed by John Darren Blanchard to have the domiciliary custody of his minor children changed from his former wife, Michelle Hebert, to himself and to require her to pay him child support. The motion was met by a rule to increase the existing child support award. All three issues were tried together, and the trial court rejected Mr. Blanchard’s demands but reserved ruling on Ms. Hebert’s demand pending further proceedings. Mr. Blanchard has appealed.
We first note that this matter is not properly before us because it is not an ap-pealable judgment. Only final judgments are appealable. La.Code Civ.P. art.2083. “A judgment that determines the merits in *1104 whole or in part is a final judgment.” La. Code Civ.P. art. 1841. However, it is intended that there be only one judgment unless the partial judgment fits within one of the categories provided by La.Code RCiv.P. art. 1915(A).[1] This judgment does not. However, because we find that the trial court erred in not changing custody from Ms. Hebert to Mr. Blanchard, we choose to invoke the authority of La.Code Civ.P. art. 2164 and “render [a] judgment which is just, legal, and proper upon the record on appeal.” To do otherwise would result in a remand of the matter for rendition of a judgment on Ms. Hebert’s demand for additional child support and a new appeal, after which we would reach the same result as we reach in this opinion. More importantly, the delay would maintain the children in a custody situation which is not in their best interest.
John Darren Blanchard and Michelle Hebert were married on August 14, 1982. Two children were bom of that marriage: Blake, born September 3, 1985, and Heather, born August 11, 1987. On April 21, 1989, Ms. Hebert filed for a legal separation. The judgment of separation awarded the parents joint custody of their children, with Ms. Hebert being named as the primary custodial parent and Mr. Blanchard being ordered to pay child support in the amount of $100.00 per child per month.
The parties were divorced by a consent decree signed on February 5, 1990. In that judgment, the joint-custody arrangement was maintained with some modification and Mr. Blanchard’s support obligation was increased to $150.00 per child per month.
On January 24, 1997, Mr. Blanchard filed the instant motion for a change of custody and for child support. Ms. Hebert responded to that motion by filing a rule to increase the existing child support obligation. Trial on the three issues was held on February 18, 1997. On February 26, 1997, the trial court signed a judgment wherein it rejected Mr. Blanchard’s demands but reserved ruling on Ms. Hebert’s request for Ran increase in child support. The judgment was not filed until March 3, 1997. Mr. Blanchard has appealed.
Prior to their separation, Mr. Blanchard, Ms. Hebert, and the children resided in their three-bedroom brick home on Cypress Street in Abbeville, Louisiana. When the separation occurred, Ms. Hebert and the children initially moved in with her mother, and Mr. Blanchard remained in the Cypress Street home. Thereafter, Ms. Hebert moved to an apartment complex in Abbeville and then to a house on South Guegnon Street in the same city.
Sometime in 1990, Ms. Hebert and the children moved into a fourth residence located on Maude Avenue in Abbeville. She and the children shared that home with her then lover, Shannon Broussard. In 1991, Shannon Broussard, Ms. Hebert, and the children moved into a larger house, and in August of 1992, they moved into a house in Erath, Louisiana, which Shannon Broussard had purchased. Ms. Hebert remained with Shannon Broussard until June or July of 1993.
While Shannon Broussard worked offshore, Ms. Hebert began a sexual relationship with Mike Broussard. This unfaithfulness on her part resulted in the breakup of the relationship between Ms. Hebert and Shannon Broussard. Immediately after the separation, Ms. Hebert and the children moved back to her mother’s residence. However, in February of 1994, she and the children moved again — this time to a house on Sampson Street in Abbeville, where she and Mike Broussard began to live in open concubinage.
In October of 1995, Ms. Hebert, Mike Broussard, and the children moved to the house on Maude Avenue that she had previously shared with Shannon Broussard. Although Ms. Hebert and the children were still living on Maude Avenue at the time of the trial of the rules, Mike Broussard had disappeared from the scene, and Alan UCharles was living with Ms. Hebert.
Blake started school while Ms. Hebert and Shannon Broussard were living together on Maude Avenue. Blake attended Herod Elementary School that first year, and the next year he attended Dozier Elementary School *1105 in Erath. After a subsequent move, he was enrolled in Eaton Park School the next year. Heather began her education at Eaton Park that same year. Although the children started the next year at Eaton Park, shortly thereafter they transferred to Herod Elementary, where they were enrolled at the time of trial.
Each custody case must be decided on its own particular facts and circumstances, and the paramount goal is to do what is in the best interest of the minor children. La.Civ.Code art. 131; Muller v. Muller, 94-281 (La.App. 3 Cir. 10/5/94); 643 So.2d 478. The trial court is vested with a vast amount of discretion in deciding child custody eases, and its decision should be given great deference on appellate review. Bagents v. Bagents, 419 So.2d 460 (La.1982).
In Beard v. Beard, 599 So.2d 486, 488 (La.App. 3 Cir.1992), this court defined the burden of proof in custody modification cases as follows:
In custody modification cases, when a party attempts to modify a “considered decree”, he bears the heavy burden of proving that the continuation of present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
When no evidénee is adduced at the district court level prior to the entry of the joint custody order which is sought to be modified, that joint custody decree is not a “considered decree” within the meaning of Bergeron, supra. In this situation, the heavy burden of proof is not applicable, but the moving party must still prove a material change in circumstances since the entry of the original decree and that the modification proposed is in the best interest of the child. McGee v. McGee, 552 So.2d 576 (La.App. 2d Cir.1989).
|5In the ease before us, the original joint custody decree signed on February 5, 1990, was not a “considered decree,” and therefore, Mr. Blanchard’s burden is to prove by a preponderance of the evidence that a material change in circumstances has occurred and that the modification proposed is in the best interest of the children.
We find no difficulty in concluding that Mr. Blanchard established numerous, material changes of circumstances. Since the divorce in February of 1990, he has remarried and has basically stabilized his life. To the contrary, Ms. Hebert’s personal situation seems more complicated than that which existed at the time of the divorce. She has lived with three men to whom she was not married, has moved nine times since the separation, and has subjected her now school-age children to four separate school transfers.
Having determined that there has been a significant change of circumstance, the court must now determine whether the proposed custody modification is in the best interest of the children. La.Civ.Code art. 134 lists twelve nonexclusive factors which a court may consider in determining the best interest of the children. These factors include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it .affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
*1106 (9) The reasonable preference of the child, if the court deems the|6child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The application of all but one of these factors weighs in favor of changing custody to Mr. Blanchard.
Although the actual custody issue is subject to an abuse of discretion evaluation, factual findings by the trial court are reviewed on appeal under the manifest error or clearly wrong standard, Rosell v. ESCO, 549 So.2d 840 (La.1989). In its reasons for judgment, the trial court made no mention of the application of the factors listed above but simply concluded that Mr. Blanchard failed to establish a material change of circumstances and that the custody modification was in the best interest of the children. However, the record reflects that there is little factual dispute concerning the litigants’ activities since the divorce.
Ms. Hebert does not deny her numerous moves or her relationships with Shannon Broussard, Mike Broussard, and Alan Charles. Certainly these circumstances contributed to an unstable environment and to the lack of permanence of a family unit. Additionally, Ms. Hebert’s promiscuity calls into question her moral fitness, affects the children’s welfare, and reveals a total lack of spiritual guidance to the children. In fact, her sexual indiscretions were a direct violation of the joint custody order which provided in part:
During periods of custody and exercising visitation, the custodial parent shall limit encounters with members of the opposite sex while in the presence of either child so as not tó confuse or mislead the children, and so as not to diminish the parent-child relationship by fostering other relationships which may give rise to persons acting as surrogate parents.
It is difficult to see how Ms. Hebert’s behavior could be anything less than confusing |7and misleading to the minor children. In contrast, during the same time period, Mr. Blanchard continued to reside in the former family home, remarried, and began to take on more and more responsibility in the educational and medical affairs of the children. His current wife expressed and demonstrated by her actions a willingness to provide a wholesome environment for the children.
Even more disturbing is Ms. Hebert’s lack of concern over others who had access to and influence over the children. Ms. Hebert became acquainted with Mike Broussard through his relationship with her sister. Her sister at that time was dating a friend of Mike’s, whose background included a conviction for obscenity with a juvenile. Apparently, Ms. Hebert permitted the children to be around this friend of Mike Broussard’s. Additionally, while Ms. Hebert and Mike Brous-sard lived together, Ms. Hebert’s other sister was living with another man on the weeks her husband was offshore. Despite being aware that this other man had previously been convicted of possession of cocaine, Ms. Hebert allowed him to baby-sit her children on at least one occasion. These judgment decisions concerning her children’s association with others not only call into question Ms. Hebert’s mental thought process in considering these associations appropriate but also cause the court to question her commitment of love and affection to her children.
The physical health of the children also deteriorated while they were in Ms. Hebert’s custody. * During one summer vacation, Mr. Blanchard discovered that Blake had six cavities and Heather’s teeth were not much better. Ms. Hebert appeared unconcerned, suggesting that the children had “bad teeth,” and generally left the responsibility for oral hygiene to the children themselves. On another occasion in 1991, Blake went to visit with Mr. Blanchard, suffering from a severe case of Indian Fire which Ms. Hebert knew nothing about. In July 1992, Blake suffered from such |8a severe case of dermatitis that he lost a toenail. Given all of these sitúa- *1107 tions, Mr. Blanchard assumed the children’s medical care, without any serious objection from Ms. Hebert.
Because of the dispute over Blake’s discipline, communication between the parties broke down soon after they separated. While the facts of the dispute are in conflict, what is clear is that Ms. Hebert ceased communicating with Mr. Blanchard concerning the children, and from that point forward, Mr. Blanchard received information concerning the children’s education only from the children or from the school. Also, Ms. Hebert left the decisions concerning after-school tutorial assistance up to the children themselves. If they did not want to participate, they were not required to do so. Only after Mr. Blanchard’s custody rule was filed did Ms. Hebert show an interest in her children’s education.
The only factor in La.Civ.Code art. 134 not weighing in favor of Mr. Blanchard is the preference factor. However, there was no evidence on the children’s preference, and their young ages would make such a preference of little probative value. Considering the evidence presented, we find that the trial court abused its discretion is denying Mr. Blanchard’s request for a change of custody. Having reached that conclusion, we render judgment changing domiciliary custody to Mr. Blanchard and ordering that the former visitation plan for Mr. Blanchard will now be the visitation schedule for Ms. Hebert. All other provisions of the joint custody plan shall remain in full force and effect.
By denying Mr. Blanchard’s motion to change custody, the trial court rendered moot his request for child support. Turning to that issue, we find that the record contains only basic evidence concerning the income, expenses, and other contributing factors of the litigants. Mr. Blanchard’s gross income for 1996 was $31,240.00 and RMs. Hebert’s was $13,654.00 for the same period. Combining these amounts and reducing them to a monthly figures produces a combined monthly income of $3,741.00. Neither litigant produced evidence of necessary adjustments to this total, and we therefore consider $3,741.00 to be the combined adjusted monthly gross income for purposes of La. R.S. 9:315.14. That schedule provides that, for a combined adjusted monthly gross income of $3,741.00, the appropriate child support obligation for both parents is $860.00 per month.' Ms. Hebert is responsible for thirty percent of that obligation, or $258.00 per month. We therefore award Mr. Blanchard the sum of $258.00 per month as child support.
DISPOSITION
For the foregoing reasons, the judgment of the trial court is reversed. We render judgment herein modifying the prior custody decree by naming John Darren Blanchard as the custodial parent of Blake and Heather Blanchard and awarding Michelle Hebert the visitation rights previously enjoyed by John Darren Blanchard. All other terms of the prior custody decree are to remain in full force and effect. We also render judgment herein ordering Michelle Hebert to pay John Darren Blanchard child support in the amount of $258.00 per month. All costs of these proceedings are taxed against Michelle Hebert.
REVERSED AND RENDERED.

. La.Code Civ.P. art.1915 was amended by Acts 1997, No. 483, § 2.