NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

26-12

ZACHARY JOEL SEAY

VERSUS

KIRBY JANE BANKS

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NUMBER 100,937, DIVISION B
HONORABLE C. ANTHONY EAVES, DISTRICT JUDGE

**********

SHARON DARVILLE WILSON
JUDGE

**********

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, and Sharon Darville Wilson, Judges.

AFFIRMED.

**Elvin C. Fontenot, Jr.**
**LAW OFFICE OF ELVIN C. FONTENOT, JR.**
**110 East Texas Street**
**Leesville, Louisiana  71446**
**(337) 239-2684**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Zachary Joel Seay**

**Jonathan T. Jarrett**
**THE JARRETT FIRM**
**1304 Lafayette Street**
**Lafayette, Louisiana  70501**
**(337) 291-9833**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Kirby Jane Banks**

**WILSON, Judge.**

In this custody proceeding, the mother, Kirby Jane Banks (Ms. Banks), appeals the trial court judgment awarding sole custody of the two minor children to their father, Zachary Joel Seay (Mr. Seay). We affirm.

I.

**ISSUES**

Ms. Banks asserts the following six assignments of error:

1.     The trial court failed to properly consider the history of domestic violence between the parties in evaluating the custody factors in La.[Civ.Code] art. 134.

2.     The trial court improperly failed to admit evidence concerning the history of domestic violence between the parties.

3.     The trial court failed to comport with the requirements of the Post Separation Family Violence Relief Act concerning awards of custody or visitation to parents with a history of family violence.

4.     The [t]rial [c]ourt failed to apply the proper legal standard in awarding [s]ole [c]ustody to the Father.

5.     The trial court failed to allow Mother finite and enforceable time periods in its considered decree of child custody, in violation of her constitutional rights and authority as a parent.

6.     The trial court failed to admit testimony of Mother's treating physician, which would have influenced the outcome of the case.

II.

**STANDARD OF REVIEW**

The trial court is in a better position to evaluate the best interest of the child from its observances of the parties and witnesses; thus, a trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion.

*Hawthorne v. Hawthorne*, 96-89, p. 12 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied*, 96-1650 (La. 10/25/96), 681 So.2d 365. Ms. Banks, however, argues

that a de novo review of the record is warranted based on alleged legal errors by the trial court.  Having determined that the trial court did not make any error of law, as discussed more fully below, we review this matter under the manifest error and abuse of discretion standards of review:  the trial court's factual findings are reviewed for manifest error while "the actual custody issue is subject to an abuse of discretion evaluation."  *Hebert v. Blanchard*, 97-550, p. 6 (La.App. 3 Cir. 10/29/97), 702 So.2d 1102, 1106.

## III.

## <u>FACTS AND PROCEDURAL HISTORY</u>

Mr. Seay and Ms. Banks were married on August 20, 2005, and were divorced by judgment dated February 21, 2013,[1] in Lafayette Parish, Louisiana.  Three children were born of or legitimized by that union:  E.S., M.S., and C.S.[2]  E.S. reached the age of majority during the pendency of these custody proceedings, which span thirteen years and two jurisdictions.

The parties initially entered into a consent judgment as to custody on February 23, 2012, before C.S. was born.  That judgment provided for joint custody of E.S. and M.S. with Ms. Banks being designated as the domiciliary parent.  The parties abided by that consent judgment until May 25, 2018, when a Lafayette parish judge granted Ms. Banks immediate temporary custody of E.S., M.S., and C.S.  Ms. Banks had filed two petitions for protection of abuse and had been granted a protective

---

[1] Ms. Banks filed divorce on December 15, 2011.

[2] While Uniform Rules—Courts of Appeal, Rules 5–1 and 5–2 do not mandate the use of initials to protect and maintain the privacy of the minor children in this case, we choose to use them.  *See Rodock v. Pommier*, 16-809 (La.App. 3 Cir. 2/1/17), 225 So.3d 512, *writ denied*, 17-631 (La. 5/1/17), 221 So.3d 70.

order on July 10, 2017. Mr. Seay filed a reconventional demand seeking joint custody.

On September 21, 2018, the parties entered into a consent judgment providing for joint custody of the three children and naming Ms. Banks as the domiciliary parent. The parties abided by this consent judgment[3] until April 27, 2021, when they entered into a written stipulation[4] giving Mr. Seay domiciliary rights to M.S., who was ten years old, and he went to live with Mr. Seay at the time.

On February 28, 2022, Mr. Seay filed an ex parte petition for custody seeking sole custody of the three children in the Thirtieth Judicial District Court. On March 2, 2022, Judge C. Anthony Eaves signed an ex parte custody order giving Mr. Seay immediate temporary custody. Ms. Banks filed a motion to vacate that ex parte order and to transfer the case to the Fifteenth Judicial District Court. She also filed exceptions of lis pendens, improper jurisdiction, improper venue, forum non conveniens, and forum shopping.

On June 26, 2022, the Thirtieth Judicial District Court issued an interim order of joint custody with Ms. Banks being designated as domiciliary parent of E.S. Mr. Seay was designated as domiciliary parent of M.S. and C.S. Ms. Banks was ordered to complete drug abuse/addiction education classes, parenting classes, and anger management classes.

Mr. Seay filed the instant petition for modification of joint custody, along with a rule for contempt and for suspension of visitation, on February 1, 2024. He filed a first supplemental and amended petition seeking to have Ms. Banks submit to a

---

[3] This judgment was later designated by the Thirtieth Judicial District Court as the judgment from which any modifications by that court might be made.

[4] The document itself states: "This document was signed on May 7, 2021[,] but made effective April 27, 2021[,] in front of the notary public."

10-panel hair follicle drug screen. He sought sole custody of M.S. and C.S. subject to visitation in favor of Ms. Banks once she completed the classes previously ordered.

A March 26, 2024 interim order made the judgment of the Fifteenth Judicial District Court the judgment of the Thirtieth Judicial District Court for the purposes of modification, ordered Ms. Banks to submit to a 10-panel hair follicle drug screen, and suspended Ms. Banks' visitation until a drug screen with a clear result was provided to the court. In response, on July 15, 2024, Ms. Banks filed a motion for expedited hearing, rule for modification of prior custody judgment (seeking sole custody), and rule for contempt.

Trial began on October 29, 2024, with Ms. Banks representing herself. When the trial could not be completed on that day, it was recessed until December 12, 2024. Ms. Banks retained counsel and asked for multiple continuances. The trial resumed on May 13, 2025, and the trial court issued oral reasons for ruling that day. The trial court found that there was a material change in circumstances and awarded sole custody of M.S. and C.S. to Mr. Seay. The ruling was reduced to writing and signed on July 10, 2025.[5] The judgment denied the exceptions of lis pendens, improper jurisdiction, improper venue, forum non conveniens, forum shopping, and no right of action as well as the rule for contempt filed by Ms. Banks. The judgment further ordered Ms. Banks to undergo mental health and substance abuse evaluations with Laura Knight at the Kite Clinic in Lafayette.

---

[5] This court notes that the judgment is dated July 10, 2024, and states "Ordered in Open Court on March 7, 2024." The first page of the judgment clearly states that trial was held on March 13, 2025, and the notice of judgment states that judgment was rendered on July 10, 2025.

## LAW AND DISCUSSION

*History of Domestic Violence*

The first three assignments of error alleged by Ms. Banks involve the application of the Post Separation Family Violence Relief Act, La.R.S. 9:361–369, and the admissibility of evidence and testimony concerning the history of domestic violence in this case. Ms. Banks argues that despite the trial court receiving uncontroverted evidence concerning the history of domestic violence, the trial court found that domestic violence was not a factor.

Ms. Banks, who was representing herself at the time, questioned Mr. Seay about a protective order issued in 2017 and an arrest in June of 2017. Ms. Banks attempted to introduce pleadings that were filed in Lafayette Parish and to question Mr. Seay about them. Mr. Seay's attorney objected to the relevance of things that happened prior to the 2018 consent judgment. The trial court sustained the objection. On redirect, Mr. Seay testified that he was arrested, charged with rape, abuse, and violation of a protective order. He further testified that he was tried and found not guilty on all charges.

In rendering its ruling, the trial court stated:

In that section of Article 134 both have to do with abuse[,] and I don't find - - there was [sic] some old allegations obviously that was [sic] just barely mentioned, but it was brought up in previous litigation in Lafayette, but I don't find that the father - - I don't find those to be an issue in relation to the father in this situation. So I don't find that they are applicable to the current situation.

According to Ms. Banks, this was a legal error, and she argues that once a history of domestic violence exists, the trial court must award custody and visitation in accordance with La.R.S. 9:341 and 364. Ms. Banks' argument, however, fails to

recognize the significance of the fact that she entered into a consent judgment on September 21, 2018. We are mindful that "the trial court should not exclude evidence in a custody modification proceeding if that evidence is relevant and material to an issue that the parties have not previously had 'a full and fair opportunity to litigate.'" *Smith v. Smith*, 615 So.2d 926, 932 (La.App. 1 Cir. 1993). "For evidence of facts occurring before a stipulated judgment to be admissible, the evidence must meet the criteria of relevance and the balancing test as set forth in the Louisiana Code of Evidence. *See* [La.Code Evid.] arts. 401–403." *Raney v. Wren*, 98-869, p. 6 (La.App. 1 Cir. 11/6/98), 722 So.2d 54, 58.

We have considered the testimony of the parties and note that Ms. Banks does not make any allegations that Mr. Seay abused the children or abused her after the 2018 consent judgment. Thus, we cannot say that the trial court abused its discretion in excluding evidence of the alleged history of family violence. These three assignments of error are without merit.

*Sole Custody*

Next, in assignment of error number four, Ms. Banks argues that the trial court failed to apply the proper standard in awarding sole custody of M.S. and C.S. to Mr. Seay. She argues that La.Civ.Code art. 132 "mandates that the Court must find clear and convincing evidence that awarding custody to one of the parents is not in the best interests of the minor child." Ms. Banks cites *Griffith v. Latiolais*, 10-754 (La. 10/19/10), 48 So.3d 1058. In that case, this court reversed the trial court's award of joint custody, finding that it was inconsistent with the trial court's factual findings that the father "had little to no involvement" in the child's life and behaved in a "devious, manipulative, and retaliatory" manner. *Id.* at 1066. In reversing this court's award of sole custody, the Louisiana Supreme Court noted that it "granted

Brad's writ application to determine whether the court of appeal erred in granting Resa sole custody of Cole, especially where she did not ask for sole custody in her pleadings." *Id.* at 1067.

Louisiana Civil Code Article 132 states:

> If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the provisions of R.S. 9:364 apply or the best interest of the child requires a different award. Subject to the provisions of R.S. 9:364, in the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.

It is well settled that there are two types of custody awards (*i.e.*, considered decrees and stipulated judgments) and that "different burdens of proof apply to each of the two types of [] awards." *Tracie F. v. Francisco D.*, 15-1812, p. 10 (La. 3/15/16), 188 So.3d 231, 239. *Bergeron v. Bergeron*, 492 So.2d 1193, 1200 (La.1986), established that:

> [w]hen a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.

But, "[i]n cases where the underlying custody decree is a stipulated judgment, and the parties have consented to a custodial arrangement with no evidence as to parental fitness, the heavy burden of proof enunciated in <u>Bergeron</u> . . . is not applicable." *Beem v. Beem*, 20-897, p. 5 (La.App. 1 Cir. 4/20/21), 324 So.3d 682, 686.

Since the custody decree in this case is a stipulated judgment rather than a considered decree, Mr. Seay bears the burden of proving that: "(1) a material change of circumstances has occurred since the stipulated judgment was entered, and (2) his proposed modification is in the best interest of the children." *Simpson v. Jagneaux*,

24-386, p. 12 (La.App. 3 Cir. 3/12/25), 408 So.3d 1095, 1104. "The burden on the parent seeking sole custody is to demonstrate that the granting of custody to that parent alone will be in the best interest of the child[,]" and the court utilizes the factors set forth in La.Civ.Code art. 134 to determine the best interest of the child. *Griffith*, 48 So.3d at 1068. "The weight to be given each factor is left to the discretion of the trial court." *Mullaly v. Baudoin*, 24-1201, p. 17 (La.App. 1 Cir. 5/23/25), 417 So.3d 811, 822.

In its oral reasons for ruling of May 13, 2025, the trial court considered all of the testimony and evidence and discussed each factor listed in La.Civ.Code art. 134. The trial court found that the "old allegations" of abuse were "not an issue in relation to the father in this situation." The trial court went on to find that the factors enumerated in art. 134 all weighed in favor of Mr. Seay but cautioned that Mr. Seay needed to work at facilitating and encouraging a close and continuing relationship between the children and Ms. Banks. The trial court also considered the testimony of both boys that it was their preference to remain with Mr. Seay. The trial court found that Ms. Banks had substance abuse and mental health issues that constituted a material change in circumstances warranting the award of sole custody to Mr. Seay.

Ms. Banks' entire argument hinges on her assertion that La.R.S. 9:364 prevents Mr. Seay from being awarded sole or joint custody of the minor children. However, since we have concluded that the trial court did not err in its finding that the allegations of abuse occurring before the consent judgment were not relevant to the current custody determination, we find this argument to be without merit.

Moreover, the father in *Smith v. Smith*, 20-597 (La.App. 3 Cir. 5/26/21) (unpublished opinion), made a similar argument concerning the trial court's failure to apply the clear and convincing standard before awarding sole custody to the

8

mother in her action to obtain sole custody after entering into two prior consent judgments. This court cited *Griffith*, 48 So.3d 1058, and noted that the clear and convincing standard required a showing that the existence of a disputed fact is much more probable than its non-existence. This court went on to say:

> There is absolutely nothing in the record before this court that indicates that the trial court used a lesser burden of proof in making its determination. Simply because the trial court did not use "clear and convincing evidence" as magic words in its reasons does not indicate that the standard was not applied. To the contrary, the trial court issued explicit, detailed, thorough, and lengthy reasons for judgment, which indicate that the trial court clearly found it highly probable that sole custody was in the best interest of the child.

*Smith*, 20-597, pp. 5–6.

Such is the case here, as detailed above, and after careful review of the record, this court finds that the trial court did not abuse its discretion in determining that there is a material change in circumstances meriting the award of sole custody to Mr. Seay.

*Visitation*

"[A] parent not granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child." La.Civ.Code art. 136(A).

In assignment of error number five, Ms. Banks alleges that the trial court's judgment is deficient because it fails to award her any periods of visitation. The judgment orders Ms. Banks to undergo mental health and substance abuse evaluations and follow through with any and all recommendations. The judgment states:

> [U]pon the completion of the mental health evaluation and the substance abuse evaluation and KIRBY JANE BANKS is following through with the recommendations of Laura Knight, she may begin visiting with her children at Whistle Stop in Lake Charles, Louisiana

under supervision for four hours at a time, every other weekend for a minimum of two months, with graduated visitation once the required evaluations are completed along with all recommendations of Laura Knight. Said visitation will start August 1, 2025, if KIRBY JANE BANKS has completed both evaluations and is going forward with the recommendations of Laura Knight.

"In visitation matters, as in custody, much discretion is vested in the trial judge, whose discretion will not be disturbed absent an abuse of discretion." *Verret v. Verret*, 34,982, p. 17 (La.App. 2 Cir. 5/9/01), 786 So.2d 944, 954. "That discretion extends to the determination of what constitutes reasonable visitation." *Smith*, 20-597, p. 9.

We note the following: (1) the stipulated judgment of September 21, 2018, required Ms. Banks to complete the Clearstart assessment process; (2) a November 25, 2019 order lifting the monitoring restrictions on Ms. Bank's visitation still contained the requirement that Ms. Banks follow all recommendations of Clearstart; and (3) a June 22, 2022 interim order required Ms. Banks to enroll in and complete drug abuse/addiction education classes, parenting classes, and anger management classes. There is no evidence in the record that Ms. Banks has complied with any of the conditions set forth by the court to begin visitation.

We find no abuse of discretion in the trial court's finding that it was in the best interest of the children to require Ms. Banks to meet certain conditions before awarding visitation.

*Testimony of Matthew deClouet, NP*

"[T]his court reviews evidentiary rulings regarding the admissibility of expert testimony under the abuse of discretion standard." *Tillman v. LAMMICO*, 24-419, p. 7 (La.App. 4 Cir. 8/27/24), 399 So.3d 687, 692, *writ denied*, 24-1185 (La. 12/11/24), 396 So.3d 968.

Matthew deClouet (Mr. deClouet) is a psychiatric mental health nurse practitioner who has been treating Ms. Banks since 2015. Mr. Seay testified that Mr. deClouet was his and Ms. Banks' high school classmate.

Mr. deClouet was deposed on February 15, 2025. Ms. Banks sought to have him testify at trial. At the time she was representing herself, she asked if Mr. deClouet's testimony could be taken out of order, and the trial court responded: "It depends on who's pleading. I think . . . Mr. Fontenot's client filed first." The trial court went on to explain: "usually the person that files first is the one that gets to go first because they have the burden to prove something. Now, if Mr. Fontenot would like to call your provider out of order, that's Mr. Fontenot's, because he gets to present his case." Ms. Banks responded: "Okay."

Ms. Banks asked for and was granted a continuance of the December 19, 2024 hearing date. She then asked for and was granted a continuance of the January 30, 2025 hearing date. One of the reasons for requesting the continuance was to depose Mr. deClouet. When Ms. Banks' counsel attempted to introduce the deposition into evidence, Mr. Seay's counsel objected on the grounds that Mr. deClouet was not an expert in the field of drug testing or analysis of drug testing results. The following colloquy occurred:

BY THE COURT:

What purpose are you trying to use the deposition for, Mr. Bailey?

[BY MR. BAILEY]:[6]

Your honor, Judge, what we had done the deposition for was because of the - - a letter was given by - - a letter was given to Ms. Banks concerning her usage of prescribed drugs[] and when she got

---

[6] We note that the transcript labels this response as "BY THE COURT." But it is clearly Mr. Bailey responding to the trial court's question.

these prescribed drugs. Your Honor, at some point in time I think you wanted to have it expanded whether that was the proper amount or she's doing - - she's using that within the boundaries of what she is supposed to do it. Mr. - - this nurse practitioner is the one who prescribe[s] it[,] and, therefore, that's why we deposed him so that we could expand upon that aspect of the letter and her prescription use.

. . . .

BY MR. FONTENOT:

That's my objection.

BY THE COURT:

It's a - - I mean, it's a test result from a drug test that your client took which showed amounts that are substantially more than the testing amount to register. I don't know what is in this deposition.

. . . .

BY THE COURT:

- - I don't, you know, I don't know if in there he said I prescribed at this level and this is what it should be, you know?

BY MR. FONTENOT:

Well, that's my objection. He candidly said that he wasn't an expert in any analysis to say what milligram would be appropriate or not.

BY THE COURT:

Right.

BY MR. FONTENOT:

And that's what I - - because he wasn't qualified as an expert in any field.

BY MR. BAILEY:

He wasn't, and, Judge, that's not what we're trying to do[;] we're trying to make sure she was on prescription meds pertinent to the letter - - pertinent to what he prescribed[,] and that's what we're trying - -

BY THE COURT:

Being on prescription meds means nothing.  The point would be is - - for the Court would be, one, what was she prescribed[;] two, was she taking that[;] and then the third thing was would like prescription around then equate to those test results.  I mean, that's the real - - the three things. . . . The issue isn't whether or not she was prescribed[,] it's whether she, in fact, she is prescribed[,] if she is following the prescription or she is taking more than she is supposed to.

. . . .

BY THE COURT:

. . . The question the Court, I, have is does whatever she [is] prescribed equal up to that test result.

. . . .

BY MR. BAILEY:

My issue, Judge, is that we gave [sic] the person that actually prescribed the medicine testified about her usage to [sic] that medicine, and that's what we're offering to the Court is an explanation as to what she is doing that's all.  I think that's - -

BY THE COURT:

I mean, I think you can offer it, and I think I can admit for the purposes of saying he prescribed her medication, I mean, I don't - -

BY MR. BAILEY:

I think that's a trier of fact issue.  If you read through the deposition it may shed light on what you're looking to receive from that too, Judge.  So without looking at it - -

. . . .

BY THE COURT:

- - by Mr. Fontenot and he[] says that those - - that cause of [sic] link between the drugs prescribed and the amount isn't in there[,] and the second thing is that your guy whether he be a PA or a nurse practitioner is not qualified as an expert.  So if he wasn't qualified as an expert in that deposition[,] he can't give anything that is asked into an opinion.  He's a fact witness only at that point.  So I'll let you proffer that deposition[.]

The deposition was proferred.[7] Mr. deClouet testified that he obtained a bachelor's degree in nursing and a master's degree in psychiatric mental health nurse practitioner. That degree allows him to perform psychiatric evaluations, to treat patients with medications, and to provide therapy. Mr. deClouet testified that he had never been qualified as an expert in court. Ms. Bank's counsel noted: "we're not trying to qualify [Mr. deClouet] as an expert at, in this - - in this aspect because we're just seeking what you have been treating Ms. Kirby Smith with." Mr. deClouet went on to testify about Ms. Banks' psychiatric diagnoses and the medications he prescribed to her. When questioned about the results of the hair analysis and how certain drugs would show up on a drug test, Mr. deClouet responded: "And I'm no expert with the hair test, but I just - - I know metabolism of medicine, and I know with drug interactions . . . you can't make an assumption just because it's out of the reference range that someone is abusing the medicine." At that point, Mr. Seay's counsel objected. Ms. Banks' counsel then stated: "So all we're asking you, sir, is that what you prescribed, not about any particular drug test all, but when it will show up, it will show up as an Adderall and as an amphetamine?" Mr. deClouet responded in the affirmative.

Mr. deClouet gave several reasons that levels for amphetamine could be elevated. As the trial court noted, the pertinent issue was whether the medication and dosages she was prescribed were equivalent to the concentration of substances found in the drug test. Mr. deClouet's testimony does not, and could not, answer that question. He was not qualified or tendered as an expert in that field and, therefore, could not give an opinion as to whether the medications that showed up

---

[7] We note that deposition transcript is included with the defense exhibits rather than in a separate envelope as a proffer.

on 10-panel hair follicle drug screen[8] matched the amount prescribed to Ms. Banks. Therefore, we find that the trial court did not abuse its discretion in excluding Mr. deClouet's testimony.

## V.

## <u>CONCLUSION</u>

We find no manifest error in the factual findings of the trial court and no abuse of discretion in its decision to award sole custody to Zachary Joel Seay. We affirm the judgment of the trial court in its entirety. Costs of this appeal are assessed to Kirby Jane Banks.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.

---

[8] We note that trial court's order for Ms. Banks to submit the drug screen was dated March 26, 2024. The hair sample was collected on June 13, 2024.